1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT BRADLEY NORRIS,

Plaintiff,

v.

LAWRENCE J. MAZZOLA, et al.,

Defendants.

Case No.  15-cv-04962-JSC

**ORDER DENYING DEFENDANTS'
MOTION TO DISMISS**

Re: Dkt. No. 54

Plaintiff Robert Bradley Norris filed this putative class action under the Employee
Retirement Income Security Act of 1974 ("ERISA") to recover withheld pension benefit
contributions.   Defendants, the Trustees and Administrator of the Local 38 Plan at issue, seek
dismissal pursuant to Federal Rule of Civil Procedure 12(b) on the grounds that Plaintiff lacks
statutory standing, constitutional standing, and has failed to exhaust his administrative remedies.
Having considered the parties' written submissions, and having had the benefit of oral argument
on April 14, 2016, the Court DENIES the motion to dismiss.[1]  (Dkt. No. 54.)

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. §
636(c).  (Dkt. Nos. 17, 44, 45.)

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# BACKGROUND

## A. Complaint Allegations

In August 2011, Plaintiff Robert Bradley Norris, a plumber and member in good standing of United Association Local 17 ("Local 17") located in Memphis, Tennessee, obtained a travel card from Local 17 and relocated to San Francisco, California. (Dkt. No. 1 ¶¶ 9-10.) Plaintiff then sought work through United Association Local 38 ("Local 38") as a journeyman plumber. (*Id*. at ¶ 10.) Nearly a year later, he was hired by ACCO Engineering, a signatory to a collective bargaining agreement with the Local 38 Union. (*Id*. at ¶ 11.) From July 1, 2012 until July 1, 2013, Plaintiff worked 1738 hours under a collective bargaining agreement(s), pursuant to which contributions were made on his behalf to the Local 38 Plan (the "Plan"). (*Id*. at ¶ 12.) Under the terms of the collective bargaining agreement(s), contributions were made to the Plan at the rate of $11.43 per hour for hours worked in 2012 and $12.00 per hour for hours worked in 2013. The United Association Pension Fund Reciprocal Agreement ("Reciprocal Agreement") required Local 38 to transfer the contributions made to the Plan on behalf of travelling employees such as Plaintiff to the travelling employee's home fund. (*Id.* ¶ 15.) The Plan, however, only transferred $4.45 per hour Plaintiff worked to his Local 17 plan (the "Home Fund"). (*Id*. at ¶ 13.)

On December 2, 2014, Plaintiff sent a letter to the Local 38 Plan Trustees (the "Trustees") requesting Plan documents and other information associated with the operation of the Plan. (*Id*. at ¶ 25; Dkt. No. 54-3 at 2.[2]) Two weeks later, on December 15, the Plan's legal counsel responded to Plaintiff's letter refusing to provide any of the requested documents because Plaintiff was not a Plan participant. (Complaint ¶ 26.)

Just over six months later, on June 23, 2015, Plaintiff, through legal counsel, submitted a second letter again requesting Plan documents and other information. (*Id*. at ¶ 27.) A month later, Peter Machi, the Plan Administrator, responded and again contended that Plaintiff was not a Plan participant and that he was not owed any additional employer pension contributions. (*Id*. at ¶ 28.) This time, however, Machi attached some of the Plan documents and information sought and

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

requested that Plaintiff exhaust his administrative remedies.  (*Id.*)

Plaintiff submitted an appeal to the Plan on September 15, 2015 notwithstanding his assertion that he was not required to do so.  (*Id*. at ¶ 30.)   In his appeal, Plaintiff contested the determination that he was not a Plan participant, and that he was not entitled to any additional contributions or benefits under the Plan or ERISA.  (*Id*.)   When he did not receive a response or acknowledgment of his appeal after nearly a month, his counsel sent a letter following up regarding the status. (*Id*. at ¶ 31.)  Two days later, Machi responded stating that the appeal had not been processed because Plaintiff failed to provide certain information, although Plaintiff had already provided this information or it was otherwise under Machi's possession and control.  (*Id*. at ¶ 31.)

### B. Procedural History

Plaintiff filed the underlying complaint less than two weeks later on behalf of himself and other similarly situated individuals seeking to recover reciprocity contributions and the earnings thereon which were improperly withheld by Defendants: the Plan, the Plan Trustees, and Peter Machi, the Plan Administrator.  (Dkt. No. 1.)  Plaintiff pleads four claims for relief under ERISA, Section 502, codified at 29 U.S.C. § 1132, and seeks an accrued benefit on such contributions, to recover all losses due to Defendants' breach of the Plan terms and breach of fiduciary duty, and seeks to enjoin Defendants from taking action prohibited by the Plan, the Reciprocal Agreement, and ERISA.

Defendants have yet to answer the complaint as it was agreed at the Initial Case Management Conference that it would be helpful for the Court to resolve preliminary issues involving Plaintiff's standing and administrative exhaustion.  The pending motion to dismiss followed.  (Dkt. No. 54.)

### DISCUSSION

## I. Standing

Defendants contend that Plaintiff lacks statutory standing under ERISA because he is not a Plan participant and Article III standing because he has not suffered a redressible injury.

### A. ERISA Statutory Standing

United States District Court
Northern District of California

1        To establish standing to sue under ERISA, that is, statutory standing, a former employee

2  such as Plaintiff must make a "colorable claim" that he is a plan participant.  *Leeson v.*

3  *Transamerica Disability Income Plan*, 671 F.3d 969, 977 (9th Cir. 2012) (citing 29 U.S.C. §

4  1132(a)(1)(B)).  Although Defendants and some courts use the term "standing," and standing often

5  connotes subject matter jurisdiction, ERISA statutory standing is a substantive element of an

6  ERISA claim rather than a subject matter jurisdiction question.  Thus, Defendants' motion to

7  dismiss for lack of statutory standing is reviewed under the Rule 12(b)(6) standard rather than

8  12(b)(1).  *Id.* (citing 29 U.S.C. § 1132(a)(1)(B)).

9        An ERISA plan participant is "any employee or former employee of an employer . . . who

10  is or may become eligible to receive a benefit of any type from an employee benefit plan which

11  covers employees of such employer."  29 U.S.C. § 1002(7).  An individual may become eligible

12  for benefits if at the pleading stage he has "a colorable claim that (1) he or she will prevail in a suit

13  for benefits, or that (2) eligibility requirements will be fulfilled in the future."  *Firestone Tire &*

14  *Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989).

15        Plaintiff has made a colorable claim that he is a Plan participant.  Under the Plan "any

16  Employee who works for one or more Employers and is credited with at least 287.5 hours of

17  Contributory Service during a Plan Year shall be credited with such hours and shall thereupon be

18  deemed a Participant until incurring a break in service." [3]  (Dkt. No. 54-9 at 12.)  Plaintiff alleges

19  that he worked more than 287.5 hours for the year commencing June 2012 and that his employer

20  was required to make, and did in fact make, contributions to the Plan.  *See Flanagan v. Inland*

21  *Empire Electrical Workers Pension Plan and Trust*, 3 F.3d 1246, 1248 (9th Cir. 1993) (holding

22  that the definition of "participant" contained in the plan itself controls the court's inquiry, so long

23  as it does not conflict with statutory requirements).  Under the Plan's plain language, then, he is a

24  Plan participant.  *See Lehman v. Nelson*, 2014 WL 4540160 *4 (W.D. Wash. Sep. 11, 2014)

25  (holding with "little trouble" that the traveler plaintiff seeking to recover reciprocity pension

26  contributions was a participant under the pension plan).

27

28  [3] The Plan documents are incorporated by reference in the Complaint and therefore may be considered on a motion to dismiss.  *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994).

United States District Court
Northern District of California

1    Defendants counter that Plaintiff, as a travelling employee, was excluded from the Plan

2 because the Reciprocal Agreement makes the Local 38 Trustees merely a conduit for the transfer

3 of employer contributions to Plaintiff's Home Fund.  However, Defendants have not identified

4 anything in the Plan or other legal authority to support their argument that as a traveler Plaintiff

5 was excluded from participating in the Local 38 Plan.  Instead, Defendants refer to the Reciprocal

6 Agreement (Dkt. No. 54-2 at 5) and the Machi Declaration (Dkt. No. 54-1).  Neither document

7 establishes that a traveler such as Plaintiff is not a Plan participant notwithstanding meeting the

8 Plan's definition of participant. To the contrary, the Reciprocal Agreement states that "[t]he

9 transfer of all Employer Contributions from a Visited Fund to a Home Fund on behalf of a

10 Traveler shall constitute a complete waiver and release of all claims against the Visited Fund by

11 the Traveler for purposes of participation in the benefits of the Home Fund. "  (Dkt. No. 54-2 at 5,

12 Section 11.)  Plaintiff alleges that Defendants did not transfer all of Plaintiff's employer's

13 contributions. (Dkt. No. 1 ¶ 13.)  Thus, by implication, the Reciprocal Agreement contemplates

14 that the travelling employee (Plaintiff) may have a claim against the visiting fund (the Plan) if the

15 visiting fund does not transfer all such contributions—otherwise there would be no need for a

16 waiver.  Indeed, in another case involving a similar issue, and a reciprocal agreement with the

17 exact same language, these same Defendants argued that "[t]he Reciprocity Agreement recognizes

18 that the Traveler has standing to sue under ERISA." *Trustees of U.A. Local 38*, 13-05528-YGR

19 N.D. Cal.  (Dkt. No. 43 at 2 n.2).  While Defendants are correct that judicial estoppel does not

20 apply to this representation, the representation itself is further evidence that Plaintiff's insistence

21 that he is a participant is at least colorable.

22    Next, Defendants urge that Plaintiff has not made a colorable claim that he is a participant

23 due to his "break in service" when he stopped working in Local 38's jurisdiction on July 1, 2013.

24 Under the Plan:

25        In determining whether or not service is broken, the rule shall be
        that service is broken at the end of any two (2) consecutive Plan
26        Year periods during which the Employee fails to work a total of at
        least 575 hours for one or more Employers.

27 (Dkt. No. 54-9 at 14.)  Thus, according to Defendants, because Plaintiff has not and cannot allege

28 that he has performed covered work within the past two years, and because he does not have five

5

1   consecutive years of Vesting Credited Service with Local 38, he ceased to be a Plan participant in

2   July 2015 and therefore does not have a colorable claim to being a Plan participant. Not

3   necessarily so.

4          Under ERISA's "rule of parity," break-in-service rules must allow employees leave up to

5   five years without losing credit for pre-break service, even if the service was less than the period

6   of the break.  In particular, the rule of parity prohibits loss of credits unless the break either equals

7   or exceeds the greater of five years or the total number of years of service accumulated.  *Schendel*

8   *v. Pipe Trades Dist. Council No. 36 Pension Plan*, 880 F. Supp. 710, 715 (N.D. Cal. 1995); *see*

9   *also* 29 U.S.C. § 1053(b)(3)(D). [4]   Indeed, the Plan acknowledges to some extent the rule of parity:

> if an Employee's service is broken at a time when he has less than
> five (5) years of Vesting Credited Service, he shall cease to be a
> Participant in the Plan and his accumulated benefit and vesting
> credits in the Plan shall be forfeited unless he returns to covered
> employment and works for at least 287.5 hours in a Plan Year in the
> trade for contributing Employers within a grace period of not less
> than the greater of either five ( 5) consecutive Plan Years or the sum
> total of years of Vesting Credited Service accumulated prior to the
> break in service. He will also be credited with any additional
> Vesting Credited Service as he may earn.

16   (Dkt. No. 54-9 at 15.)  Assuming that Plaintiff is credited with less than two years of service prior

17   to his break commencing in July 2013, under ERISA's rule of parity he does not forfeit his

18   pension credits until his break exceeds five years, that is, not until 2018.

19          Defendants respond that for the rule of parity to apply here, the Plan (or an employer)

20   must have taken some adverse action that prevents the employee from resuming covered work

21   during the permissible break in service.  However, the statute does not so require, and the cases

22   upon which Defendants rely do not so hold.  *Flanaghan v. Inland Empire Elec. Workers Pension*

23   *Plan & Trust*, 3 F.3d 1246 (1993), held that the rule of parity created *the opportunity* to return to

24   covered employment and to revive prior service credits.  *Id.* at 1250. That opportunity was

---

[4] 29 U.S.C. § 1053(b)(3)(D) states: "[I]n the case of nonvested participants, years of service with the employer or employers maintaining the plan before any period of consecutive 1–year breaks in service shall not be required to be taken into account if the number of consecutive 1–year breaks in service within such period equals or exceeds the greater of—(I) 5, or; (II) the aggregate number of years of service before such period."

United States District Court
Northern District of California

1    extinguished when the plan at issue was terminated.  *Id.* Thus, *Flanaghan* actually supports the

2    conclusion that Plaintiff remains a participant at least until the rule of parity no longer applies and

3    he has not resumed covered work in the interim. While *Shawley v. Bethlehem Steel Corporation*,

4    989 F.2d 652 (3d Cir. 1993), provides some support for Defendants' argument, this out-of-circuit

5    authority in a different context does not dispositively defeat Plaintiff's claim to participant status.

6            Further, even without the rule of parity, under the Plan an employee's participant status is

7    not extinguished by a break in service if the employee has five years of Vesting Credited Service.

8    (Dkt. No. 54-9 at 15).  Plaintiff contends he has five years of Vested Credited Service because the

9    Plan recognizes Plaintiff's years of service in connection with his Home Fund.  While this

10   allegation is not in his complaint, he bases it on the Plan itself, and, in particular, on the Plan's

11   allowance of dual pro rata pensions; that is, pensions from an employee's home fund and a visitor

12   fund.  (Dkt. No. 54-9 at 24.)  The Plan, however, only recognizes service in a "Related Plan," and

13   Plaintiff explains that he requires discovery to determine whether Plaintiff's Home Fund is a

14   Related Plan.  The Court agrees.  This is yet another reason why dismissal at this stage of the

15   litigation is not appropriate.

16           Finally, Defendants' reliance in their reply on the certification requirement found in the

17   Reciprocity Agreement is too late and too early.  The Reciprocity Agreement provides that all

18   contributions received by the Visiting Fund shall be transferred to the Home Fund provided the

19   Home Fund certifies that the Traveler shall receive full credit for all the transferred contributions.

20   (Dkt. No. 54-2 at 3-4.)  In their reply, Defendants seek to introduce evidence that the required

21   certifications were never made.  Such argument and evidence may not be made for the first time in

22   a reply in support of 12(b)(6) motion and must await summary judgment.

23           On Defendants' motion to dismiss the Court may not finally resolve whether Plaintiff is a

24   Plan participant.  *See Leeson*, 671 F.3d at 979 (noting that on a Rule 12 motion to dismiss, a

25   district court should not attempt to resolve the issue of participant status).  If the employee's

26   participant status relates to the merits of his claim, as Plaintiff's does here, then the Court should

27   address its merits on summary judgment or at trial.  *Id.*  On Defendants' motion to dismiss, the

28   appropriate question is merely whether Plaintiff has made a colorable claim that he is a participant,

or more precisely, whether Defendants have shown he has not.  Defendants have not met their

burden.  *See Ruocco v. Bateman, Eichler, Hill, Richards, Inc.*, 903 F.2d 1232, 1236 (9th Cir. 1990)

(concluding that the plaintiff presented a colorable claim for relief as a "former plan participant

who contributed financially to the plan"); *Moon v. Rush*, No. 2:11-CV-03102-GEB, 2013 WL

4012828, at \*4 (E.D. Cal. Aug. 6, 2013) (noting the "the low threshold for colorable ERISA

claims").

### B. Article III Standing

Defendants also argue that Plaintiff lacks Article III standing.  "To satisfy Article III's case

or controversy requirement, [a plaintiff] needs to show that he has suffered an injury in fact, that

the injury is traceable to the challenged action of [the defendant], and that the injury can be

redressed by a favorable decision."  *Fortyune v. Am. Multi–Cinema, Inc.*, 364 F.3d 1075, 1081

(9th Cir. 2004).  Plaintiff has made the required showing.  Plaintiff alleges that his employer made

pension contributions on his behalf and that Defendants only transferred a portion of these pension

contributions to his Home Fund.  (Dkt. No. 1 ¶ 13.)  Further, "Defendants' withholding of

contributions from [Plaintiff's] Home Fund has reduced the ultimate pension benefits that

[Plaintiff] is due to receive from his Home Fund."  (Dkt. No. 1 ¶ 19.) These allegations are

adequate to establish standing for constitutional purposes.

Defendants nonetheless argue that Plaintiff has not suffered any "injury in fact" because all

the various agreements required was that Defendants transfer to his Home Fund contributions

equal to the contribution rate for his Home Fund.  This argument, however, is not about standing;

rather, it is an argument that Defendants win on the merits.  Plaintiff has been injured:  he alleges

that Defendants' conduct has reduced the ultimate pension benefit he will receive.  This injury

may ultimately have no remedy, but it is an injury.  Plaintiff has constitutional standing.

In their reply Defendants make a different argument; namely, that because Plaintiff's

Home Fund will ultimately determine whether Plaintiff's pension benefits are effected by

Defendants' retention of some of the contributions his injuries are too speculative to support

standing.  This argument, however, besides being improper because it was made for the first time

on reply, ignores Plaintiff's allegation: "Defendants' withholding of contributions from

United States District Court
Northern District of California

8

1    [Plaintiff's] Home Fund has reduced the ultimate pension benefits that Norris is due to receive

2    from his Home Fund."  (Dkt. No. 1 ¶ 19.)  While Defendants may disagree with this allegation,

3    the Court must accept it as true.  *See Levine v. Vilsack*, 587 F.3d 986, 991 (9th Cir. 2009) ("Where

4    standing is raised in connection with a motion to dismiss, the court is to accept as true all material

5    allegations of the complaint, and . . . construe the complaint in favor of the complaining party.")

6    (internal quotation marks and citation omitted).  Plaintiff has met his burden of showing Article III

7    standing. [5]

8    **II.    Exhaustion**

9            Defendants also move to dismiss for failure to exhaust administrative remedies.[6]  "As a

10   general rule, an ERISA claimant must exhaust available administrative remedies before bringing a

11   claim in federal court."  *Barboza v. California Ass'n of Professional Firefighters*, 651 F.3d 1073

12   (9th Cir. 2011).  "However, when an employee benefits plan fails to establish or follow

13   'reasonable claims procedures' consistent with the requirements of ERISA, a claimant need not

14   exhaust because his claims will be deemed exhausted."  *Id.*

15          Defendants contend that the proper procedure for raising Plaintiff's failure to exhaust is a

16   motion to dismiss pursuant to Rule 12(b)(6) because Plaintiff's failure to exhaust is clear from the

17   face of Plaintiff's complaint.  As support for their argument, they cite *Albino v. Baca*, 747 F.3d

18   1162, 1171 (9th Cir. 2014) (en banc).  Prior to *Albino*, the rule in the Ninth Circuit was that a

19   motion to dismiss an ERISA denial-of-benefits claim for failure to exhaust administrative

20   remedies should be treated as an unenumerated motion to dismiss.  *See Bilyeu v. Morgan Stanley*

21   *Long Term Disability Plan*, 683 F.3d 1083, 1088 (9th Cir. 2012).  In deciding such a motion, a

---

[5] In the section of their motion moving to dismiss for lack of Article III standing, Defendants contend that Plaintiff's third and fourth claims, which seek relief under ERISA section 502(a)(3), are foreclosed because they seek "make-whole monetary relief" and relief under Section 502(a)(3) is limited to equitable relief. (Dkt. No. 54 at 21-24). This argument does not address constitutional standing; the Court thus declines to find a lack of Article III standing on this basis.

[6] Defendants' first exhaustion argument is that they did not abuse their discretion when they denied Plaintiff's benefit claim. (Dkt. No. 54 at 26-27.) This argument is puzzling.  First, it is not about exhaustion; indeed, it assumes exhaustion.  Second, Defendants' later-made exhaustion argument insists that Plaintiff never made a claim.  The Court therefore rejects this argument without prejudice to it being made at the appropriate time on an appropriate record.

United States District Court
Northern District of California

United States District Court
Northern District of California

court may rely on evidence outside of the pleadings and may resolve disputed issues of fact. *Id.*; *see also Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 881 (9th Cir.2011) (en banc) ("[I]n entertaining an unenumerated motion to dismiss, the court may look beyond the pleadings and decide disputed issues of fact.").

In *Albino,* however, the Ninth Circuit, sitting *en banc,* recognized exhaustion of administrative remedies as an affirmative defense that defendants "must plead and prove." 747 F.3d. at 1166. The court explained that the proper procedure for exhaustion questions is a motion for summary judgment, "followed, if necessary, by a decision by the court on disputed questions of material fact relevant to exhaustion." *Id*. at 1171. However, the defense may be brought in a Rule 12(b) motion to dismiss "in the rare event that a failure to exhaust is clear on the face of the complaint." *Id*. at 1166. While *Albino* arose in a Prison Litigation Reform Act ("PRLA") case, the court emphasized that its holding extended to the use of unenumerated motions to dismiss in other contexts as well. *Id*. at 1171 (identifying cases decided under the Individuals with Disabilities Education Act, the Labor Management Relations Act, and proceedings under the Food and Drug Administration as examples).

The Court agrees with Defendants that *Albino* applies to ERISA cases. While it did not explicitly overrule the prior rule treating a motion to dismiss an ERISA claim for failure to exhaust administrative remedies as an unenumerated motion to dismiss, it implicitly did so. ERISA exhaustion, like PLSRA exhaustion, is traditionally pled as an affirmative defense. *See Forest Ambulatory Surgical Associates, L.P. v. United HealthCare Ins. Co*., No. 10-CV-04911-EJD, 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011); *Lifecare Mgmt. Servs., LLC v. Zenith Am. Sols., Inc*., No. 3:15-CV-0307-RCJ-VPC, 2015 WL 7185459, at *2 (D. Nev. Nov. 13, 2015); *Crowell v. Shell Oil Co*., 541 F.3d 295, 309 (5th Cir. 2008); *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir. 2007); *Paese v. Hartford Life & Acc. Ins. Co*., 449 F.3d 435, 445 (2d Cir. 2006). Further, other circuits have followed the procedure laid out by the *Albino* court for ERISA exhaustion questions. *See, e.g*., *Am. Chiropractic Ass'n v. Am. Specialty Health Inc*., 625 F. App'x 169, 173, n.5 (3d Cir. 2015) ("Because the exhaustion defense often requires consideration of materials outside the pleadings and is thus typically resolved on summary judgment, it is not

10

United States District Court
Northern District of California

generally the basis for dismissal under Rule 12(b)(6).") (internal citation and quotation marks omitted); *Crowell*, 541 F.3d at 309  (ERISA exhaustion is not "a jurisdictional bar," but "a defense"); *see also Abe v. New York Univ.*, No. 14-CV-9323 (RJS), 2016 WL 1275661, at *5 (S.D.N.Y. Mar. 30, 2016); *Laitinen v. Sun Life Assurance Co. of Canada*, No. 2:15-CV-144, 2016 WL 890337, at *4 (W.D. Mich. Mar. 9, 2016); *Serv. Employees Int'l Union Nat'l Industry Pension Fund v. Sci. & Commercial Sys. Corp.*, No. CV 13-1705 (JEB), 2015 WL 4078006, at *4 (D. D.C. July 2, 2015).  Thus, the Court cannot resolve disputed issues of fact on Defendants' motion; instead, it must treat it as an ordinary Rule 12(b)(6) motion in which all reasonable inferences must be drawn in the plaintiff's favor.  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The question here then is whether a failure to exhaust is evident from the face of the Complaint.  It is not.  Plaintiff alleges that in December 2014 he sent a letter to the Local 38 Plan Trustees requesting Plan documents and other information and that two weeks later he received a letter stating that he was not a participant under the Plan and thus not entitled to the requested documents.  (Complaint ¶¶ 25-26.)  Plaintiff then sent another letter and in response Defendant Machi requested that Plaintiff exhaust his administrative remedies.  (*Id.* at ¶ 28.)  Plaintiff alleges that he thereafter "filed an appeal with the Local 38 Plan on September 15, 2015" "in full compliance with Defendant Machi's letter" wherein he contested that he was not a Plan participant, and the statement that he was not entitled to any contributions or benefits under the Plan. (*Id.* at ¶ 30.)  In response, Defendant Machi sent another letter on October 15, 2015 stating that the appeal had not been processed because Plaintiff had failed to provide information."  (*Id.* at ¶ 31.)  Plaintiff alleges that his prior submissions had in fact contained this information and that he had therefore adequately exhausted his administrative remedies prior to filing suit.  (*Id.* at ¶¶ 31-33.)  Alternatively, Plaintiff contends that Defendants' communications demonstrated that exhaustion would be futile.  (*Id.* at ¶ 33.)  Drawing all reasonable inferences in Plaintiff's favor, Plaintiff has adequately alleged exhaustion for purposes of a Rule 12(b)(6) motion given, among other allegations, his allegation that he provided Defendants all the information they required to process his appeal.

**CONCLUSION**

Plaintiff has (1) made a colorable claim that he is a Plan participant, (2) sufficiently alleged a constitutional injury, and (3) alleged facts sufficient to plausibly support an inference that he exhausted his administrative remedies. Defendants' motion to dismiss is therefore DENIED. Defendants shall file their answer within 14 days and the parties shall appear for a case management conference on May 26, 2016 at 1:30 p.m. and file a joint case management conference statement one week before the conference.

This Order disposes of Docket No. 54.

**IT IS SO ORDERED.**

Dated:  April 20, 2016

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California

12