James P. Baker (State Bar No. 96302)
**Baker & McKenzie LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA 94111-3802
Telephone: +1 415 576 3000
Facsimile: +1 415 576 3099
Email: james.baker@bakermckenzie.com

Attorneys for Defendants
LAWRENCE J. MAZZOLA, JR.; ROBERT E. BUCKLEY, JR.; ARMAND KILIJIAN; SCOTT STRAWBRIDGE; FRED NURISSO; DANIEL ORSOT; MILT GOODMAN; STEVE JENNINGS; WILLIAM BLACKWELL; FRANK REARDON; JOHN CHIARENZA; TONY GUZZETTA; R.J. FERRARI, in their current or former capacities as trustees or fiduciaries of the United Association Local 38 Defined Benefit Pension Plan; PETER MACHI, in his capacity as administrator of the United Association Local 38 Defined Benefit Pension Plan

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ROBERT BRADLEY NORRIS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

LAWRENCE J. MAZZOLA, JR.; ROBERT E. BUCKLEY, JR.; ARMAND KILIJIAN; SCOTT STRAWBRIDGE; FRED NURISSO; DANIEL ORSOT; MILT GOODMAN; STEVE JENNINGS; WILLIAM BLACKWELL; FRANK REARDON; JOHN CHIARENZA; TONY GUZZETTA; R.J. FERRARI, in their current or former capacities as trustees or fiduciaries of the United Association Local 38 Defined Benefit Pension Plan; PETER MACHI, in his capacity as administrator of the United Association Local 38 Defined Benefit Pension Plan,

Defendants.

**Case No. 3:15-CV-04962-JSC**

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

Date: October 27, 2016
Time: 9:00 a.m.
Courtroom: F – 15th Floor
Judge: Hon. Jacqueline Scott Corley

SFODMS/6761559

## TABLE OF CONTENTS


Page

NOTICE OF MOTION AND MOTION .......... 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT .......... 2

I. INTRODUCTION .......... 2

II. STATEMENT OF FACTS .......... 3

A. Mr. Norris Worked As A Temporary Employee In U.A. Local 38's Jurisdiction .......... 3

B. Mr. Norris' Initial Request Was For Plan Documents .......... 3

C. Mr. Norris Never Made A Claim for Local 17 Plan Benefits .......... 4

D. Mr. Norris' Attorney Later Submitted A Claim For Plan Benefits .......... 4

E. Local 38's Plan Administrator Timely Responded .......... 5

F. Mr. Norris' Attorney Short-Circuited The Plan's Claim Review Procedure .......... 7

G. The December 2, 2014 Letter Made No Claim For Benefits .......... 7

H. Mr. Norris Appeals The Denial of His Claim .......... 8

I. Mr. Norris Was Given Additional Time To Cure His Defective Appeal .......... 8

J. Mr. Norris Abandons The Appeal Process .......... 9

K. The Local 38 Trustees Responded By Urging Mr. Norris To Return To The Appeal Process .......... 10

L. The Instant Litigation .......... 10

III. LEGAL ARGUMENT .......... 11

A. Legal Standard .......... 11

B. Mr. Norris Lacks Article III Standing .......... 11

C. Mr. Norris Is Not a Local 38 Plan Participant .......... 13

D. Mr. Norris Failed To Exhaust The Plan's Administrative Remedies .......... 14

1. Mr. Norris Never Made A Claim For Benefits .......... 15

2. Mr. Norris Abandoned His September 15, 2015 Appeal .......... 17

3. Norris Has Failed To Adequately Plead Futility .......... 18

D. Other Legal Impediments Bar the Claim .......... 19

**TABLE OF CONTENTS**
(continued)

**Page**

1. Norris' Fiduciary Breach Claims Have No Merit .......... 19
2. The Abuse of Discretion Standard Bars His Claim .......... 21
3. Mr. Norris Cannot Enforce The Terms Of The Reciprocal Agreement .......... 23

IV. CONCLUSION .......... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADA v. Wellpoint Health Networks, Inc.*,
494 F. App'x 43 (11th Cir. 2012) ....................16

*Allis-Chalmers Corp. v. Lueck*,
471 U.S. 202 (1985)....................18

*Allison v. Bank One — Denver*,
289 F.3d 1223 (10th Cir. 2002) ....................19

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................11

*Bard v. Boston Shipping Ass'n*,
471 F.3d 229 (1st Cir. 2006)....................15

*Bechtol v. Marsh & McLennan*,
2008 WL 23588 (W.D. Wash. Jan. 28, 2008)....................16

*Booton v. Lockheed Medical Benefit Plan*,
110 F.3d 1461 (9th Cir. 1997) ....................17

*Brandt v. Grounds*,
687 F.2d 895 (7th Cir. 1982) ....................19

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................11

*Chavis v. Life Insurance Co. of N. Am.*,
2009 WL 4730643 (D.S.C. Dec. 8, 2009) ....................15

*Cigna v. Amara*,
131 S.Ct. 1866 (2011)....................21

*Collins v. Burlington Northern Railroad Co.*,
867 F.2d 542 (9th Cir. 1989) ....................18

*Conkright v. Frommert*,
559 U.S. 506, 130 S.Ct. 1640 (2010)....................22

*Curtiss-Wright Corp. v. Schoonejongen*,
514 U.S. 73 (1995)....................23

*David v. Alphin*,
704 F.3d 327 (4th Cir. 2013) ....................13

## TABLE OF AUTHORITIES
(continued)


**Page(s)**

*Diaz v. United Agr. Employee Welf. Benefit Plan*, 50 F.3d 1478 (9th Cir. 1995) ....1, 2, 14, 18

*Edwards v. Briggs & Stratton Retirement Plan*, 639 F.3d 355 (7th Cir. 2011) ....16

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) ....13, 22

*Flanagan v. Inland Empire Elec. Wkrs. Pension Plan*, 3 F.3d 1246 (9th Cir. 1993) ....1, 14

*Forsyth v. Humana, Inc.*, 114 F.3d 1467 (9th Cir. 1997) ....21

*Friend v. Sanwa Bank California*, 35 F.3d 466 (9th Cir. 1994) ....19

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123 (9th Cir. 2006) ....12

*Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812 (9th Cir. 1992) ....23

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 ....20

*Gutierrez v. Wells Fargo Bank*, 704 F.3d 712 ....18

*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999) ....2, 12

*Jama v. Immigration & Customs Enforcement*, 543 U.S. 335 (2005) ....18

*LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2007) ....3, 12, 19

*Lee v. Verizon Commc'ns, Inc.*, 623 F. App'x 132 (5th Cir. 2015) ....13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....11

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Mass. Mut. Life Ins. v. Russell*,
473 U.S. 134 (1985) .......... 19

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .......... 11

*Matthews v. Chevron Corp.*,
362 F.3d 1172 (9th Cir. 2004) .......... 20

*Mertens v. Hewitt Associates*,
508 U.S. 248 (1993) .......... 2, 18, 20

*Nachman Corp. v. Pension Benefit Guaranty* Corp.,
446 U.S. 359 (1980) .......... 2

*Paulsen v. CNF Inc.*,
559 F.3d 1061 (9th Cir. 2009) .......... 20

*Reindl v. Hartford Life & Accident Ins. Co.*,
705 F.3d 784 (8th Cir. 2013) .......... 16, 17

*Reynolds Metals Co. v. Ellis*,
202 F.3d 1246 (9th Cir. 2000) .......... 3, 20

*Richardson v. Pension Plan of Bethlehem Steel Corp.*,
112 F.3d 982 (9th Cir. 1997) .......... 23

*S.D. Myers, Inc. v. City and County of San Francisco*,
253 F.3d 461 (9th Cir. 2001) .......... 11

*Saffon v. Wells Fargo & Co. Long Term Disability Plan*,
522 F.3d 863 (9th Cir. 2008) .......... 17

*Sarraf v. Standard Ins. Co.*,
102 F.3d 991 (9th Cir. 1996) .......... 18

*Skinner v. Northrop Grumman Retirement Plan B*,
673 F.3d 1162 (9th Cir. 2012) .......... 20

*Spindex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
770 F.3d 1282 (9th Cir. 2014) .......... 21

*Swanson v. Hearst Corp. Long Term Disability Plan*,
586 F.3d 1016 (5th Cir. 2009) .......... 16

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987) ....................11

*Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469 (9th Cir. 1993) ....................22

*Trustees of the U.A. Local 38 Defined Benefit Pension Plan v. Trustees of the Plumbers and Pipe Fitters National Pension Fund*, No. 4:15-cv-04703-YGR (filed on Oct. 9, 2015), Dkt. #43....................18

*Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620 (9th Cir. 2008) ....................14, 21

**<u>Statutes</u>**

29 U.S.C. §1109....................2

29 U.S.C. §1132(a) ....................2

29 U.S.C. § 1132(a)(1)(B) ....................10, 13, 21

29 U.S.C. §1132(a)(2)....................2, 10, 19

29 U.S.C. §1132(a)(3)....................3, 10, 20, 21

29 U.S.C. § 1132(a)(3)(B) ....................19

29 U.S.C. § 1132(c)(1)....................10

Employee Retirement Income Security Act of 1974 (ERISA} .................... *passim*

ERISA § 3(35), 29 U.S.C. § 1002(35)....................12, 21

ERISA § 203(b)(3)(D), 29 U.S.C. § 1053(b)(3)(D) ....................14

ERISA § 409, 29 U.S.C. § 1109 ....................2, 19

ERISA § 502, 29 U.S.C. § 1132 ....................14

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2)....................2, 19

ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)....................3, 20

ERISA § 502(c)(1)....................10, 21

Pension Protection Act (PPA)....................2

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**<u>Other Authorities</u>**

29 C.F.R. § 2560.503-1 .......... 21

29 C.F.R. § 2560.503-1(e) .......... 15

29 C.F.R. § 2560.503-1(m)(4) .......... 15

Department of Labor Regulations Section 2560.503-1(e) .......... 14

Federal Rules of Civil Procedure 56 .......... 1

Federal Rules of Civil Procedure 56(a) .......... 11

I.R.C. §411(d)(3) .......... 13

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that at 9:00 a.m. on October 27, 2016, in Courtroom F, 15th Floor, U.S. District Court, 450 Golden Gate Avenue, San Francisco, California before the Honorable Jacqueline Scott Corley, Defendants Lawrence J. Mazzola, Jr.; Robert E. Buckley, Jr.; Armand Kilijian; Scott Strawbridge; Fred Nurisso; Daniel Orsot; Milt Goodman; Steve Jennings; William Blackwell; Frank Reardon; John Chiarenza; Tony Guzzetta; R.J. Ferrari (the "Local 38 Trustees"), in their current or former capacities as trustees or fiduciaries of the United Association Local 38 Defined Benefit Pension Plan ("Local 38 Pension Plan" or "Local 38 Plan" or "Plan"); Peter Machi ("Plan Administrator" or "Machi"), in his capacity as administrator of the United Association Local 38 Defined Benefit Pension Plan (collectively, the "Local 38 Trustees") will and hereby do move this Court for an Order of Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure against Plaintiff, Robert Norris.

This Motion is brought on the grounds that there is no genuine dispute as to any material fact. Defendants are therefore entitled to judgment as a matter of law on Mr. Norris' claims brought under the Employee Retirement Income Security Act of 1974 ("ERISA"). Judgment should be entered on Mr. Norris' Complaint, because he failed to exhaust the Plan's administrative review procedure. *Diaz v. United Agr. Employee Welf. Benefit Plan*, 50 F.3d 1478, 1483 (9th Cir. 1995). The remedies Mr. Norris demands also do not arise under ERISA nor are the remedies consistent with the terms of the Local 38 Plan. Mr. Norris' claim for Participant status fails under the plain language of the Local 38 Plan, ERISA's statutory commands as well as controlling Ninth Circuit precedent, *Flanagan v. Inland Empire Elec. Wkrs. Pension Plan*, 3 F.3d 1246, 1251 (9th Cir. 1993). Dkt. #83, pp. 15-16.

This Motion is based upon this Notice of Motion and the following Memorandum of Points and Authorities, on the accompanying Declarations of James P. Baker and Alex Willson and the Proposed Order lodged herewith, and upon such other matters as may be presented to the Court at or before the time of hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

The Supreme Court has repeatedly held that because ERISA is a "comprehensive and reticulated statute," *Nachman Corp. v. Pension Benefit Guaranty* Corp., 446 U.S. 359, 361 (1980) and is "enormously complex and detailed," *Mertens v. Hewitt Associates,* 508 U.S. 248, 262 (1993), it should not be supplemented by extra textual remedies . . ." *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 447 (1999). Title 29 U.S.C. §1132(a), ERISA's civil enforcement provision, sets forth the exclusive parameters of "who can sue whom for what" in a civil ERISA action. Nowhere does that section authorize Mr. Norris to file any of the four claims he has alleged here. He is not and never has been a "participant" in the Local 38 Plan, whose trustees he sues. He therefore lacks standing to assert any of his four claims.

Other legal deficiencies preclude these claims. Even were he considered to be a "participant" in the Local 38 plan, which he is not, he failed to exhaust his administrative remedies. When alerted to deficiencies in his original submissions, Mr. Norris was afforded additional time to perfect a claim appeal in the internal review process. He eschewed the opportunity, and thereby contravened the strong policies underlying the rule requiring exhaustion of administrative remedies in ERISA actions. *See, e.g., Diaz*, 50 F.3d at 1483.

But that is not all. Mr. Norris' breach of fiduciary duty claim in Count II cannot be asserted under Section 502(a)(2), 29 U.S.C. §1132(a)(2). That subsection allows a participant to sue "for appropriate relief under Section 409." ERISA section 409, in turn, allows fiduciaries to be held liable "to make good to such plan any losses to the plan resulting from each … breach [of fiduciary duty]" 29 U.S.C. §1109. Count II does not seek to remedy a loss to the Local 38 plan. To the contrary, it seeks to transfer money out of the Local 38 Plan – either individually to Mr. Norris, or to the Local 17 Plan in which Mr. Norris actually participates. The inapplicability of section 502(a)(2) resonates with particular force here, where, among the "contributions" plaintiff seeks to recover are those made by Local 38's participating employers under the PPA to shore up the actuarial base of an underfunded plan. In the event sub-section 502(a)(2) can

somehow be deemed applicable, which it cannot on these facts, that claim fails for the additional reason that that sub-section "does not provide a remedy for individual injuries distinct from plan injuries." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2007).

Mr. Norris' third and fourth claims – purportedly brought pursuant to section 502(a)(3), 29 U.S.C. §1132(a)(3), likewise fail. Section 502(a)(3)(B) of ERISA authorizes a participant to bring an action seeking "equitable, rather than legal, relief." *Reynolds Metals Co. v. Ellis*, 202 F.3d 1246, 1247 (9th Cir. 2000). Claims three (unjust enrichment) and four (statutory penalties) seek "make whole" monetary relief that is legal, not equitable, in nature. For any or all of these reasons, this Court should enter summary judgment in favor of all defendants.

## II. STATEMENT OF FACTS

### A. Mr. Norris Worked As A Temporary Employee In U.A. Local 38's Jurisdiction

In August 2011, Robert Bradley "Brad" Norris ("Mr. Norris") worked as a plumber in Memphis, Tennessee as a member of United Association ("U.A.") Local 17. Norris Depo. 10:3-5. As a U.A. Local 17 member, he participated in the U.A. Local 17 Defined Benefit Pension Plan. *Id.* at 10:11-13**.** He obtained a "travel card" in August 2011 from U.A. Local 17 and relocated to the San Francisco Bay Area and sought work through U.A. Local 38 as a journeyman plumber. *Id.* at 14:18-20, 18:1-6. About a year later, on July 2, 2012, Mr. Norris began working for a Local 38 contractor. *Id.* at 23:12-24, 24:4-7. He then worked 1,738 hours between July 1, 2012 and July 1, 2013 for this Local 38 contractor. Compl. ¶¶ 11-12. The Local 38 Pension Plan transferred $4.45 per hour to the Local 17 Defined Benefit Pension Plan on his behalf for the hours he worked in U.A. Local 38's jurisdiction. *Id.* at ¶ 13. Mr. Norris testified he stopped working as a Traveler on July 1, 2013 in Local 38's jurisdiction. Norris Depo. 46:13-19. He further admitted that he is not a member of U.A. Local 38. *Id.* at ll. 20-23.

### B. Mr. Norris' Initial Request Was For Plan Documents

On December 2, 2014, Mr. Norris wrote to the Local 38 Trustees requesting 20 different categories of documents. Dkt. #54-3, p. 2. On December 15, 2014, counsel for the Local 38 Trustees responded. The letter informed Mr. Norris that, as a temporary employee, or "Traveler," he did not qualify as a "participant" under the terms of the U.A. Local 38 Defined Benefit Pension

Plan ("Plan" or "Local 38 Plan"). Declaration of James P. Baker ("Baker Decl.") ¶ 3, Dkt. #54-4, pp. 2-9. Because Mr. Norris was not a "participant" of the Local 38 Plan, he was not entitled to Local 38 Plan documents or other Local 38 Plan information under ERISA. Dkt. #85 at ¶ 10. The letter invited Mr. Norris to contact counsel for the Plan Administrator with any questions. Mr. Norris did not do so. Norris Depo. 106:15-107:5.

**C. Mr. Norris Never Made A Claim for Local 17 Plan Benefits**

Mr. Norris admitted at his deposition that he has never applied for any Local 17 Plan benefits. Norris Depo. 105:3:11. Nor did Mr. Norris ever file a claim for benefits with the Local 17 Plan concerning Local 38's reciprocal contributions. Norris Depo. 53:21-54:2. Mr. Norris admitted that to his knowledge a Visited Fund was not required to provide a pension benefit to a Traveler. Norris Depo. 86:17-25. Mr. Norris admitted that in July 2015 he received from Local 38 the Local 38 Pension Plan document, the Local 38 Pension Trust Agreement, the Local 38 Collective Bargaining Agreement, and the Local 38 Summary Plan Description. Norris Depo. 102:22-103:16. Mr. Norris could not name a single document that wasn't received that he needed. *Id.* Mr. Norris also admitted that the Local 17 Pension Plan does not run the risk of default due to Local 38's purported failure to transfer all contributions for him as a Traveler. Norris Depo. 103:22-104:1. Mr. Norris stated the Local 38 Plan was unjustly enriched by failing to transfer its higher pension rate on his behalf to the Local 17 Plan. Norris Depo. 50:2-16. Mr. Norris admitted he had never seen the Reciprocal Agreement prior to his deposition. Norris Depo. 83:13-21. Paying plan benefits to short-term or temporary employees, like Mr. Norris, is contrary to the written terms of the Local 38 Plan and would reduce the financial health and actuarial soundness of the Local 38 Plan. Declaration of Alexandra R. Willson ("Willson Decl.") ¶ 5.

**D. Mr. Norris' Attorney Later Submitted A Claim For Plan Benefits**

Six months later on June 23, 2015, Mr. Norris' attorney, Richard Birmingham, wrote to the Plan Administrator, claiming for the first time Mr. Norris had the right to additional employer pension plan contributions from the Local 38 Pension Plan. Dkt. #54-5. Mr. Birmingham's claim for Local 38 Pension Plan benefits asked for (1) the specific Local 38 Plan provisions addressing

the payment of reciprocal contributions; and (2) the amount of the "current accrued benefit of Mr. Norris under the Local 38 Plan." *Id.* Mr. Birmingham also asked that he be sent copies of 11 separate categories of documents. *Id.* at p. 2.

**E. Local 38's Plan Administrator Timely Responded**

The Plan Administrator, Peter Machi, responded to Mr. Birmingham on July 23, 2015, explaining that because Mr. Norris was a temporary employee, or "Traveler," he was not a participant under the terms of the Local 38 Plan. Dkt. #54-8. Even if he assumed Mr. Norris was not a Traveler, Mr. Norris' temporary employment in U.A. Local 38's jurisdiction did not generate years of vesting credit to qualify him as a Local 38 Plan participant. *Id.* Mr. Norris worked in U.A. Local 38's jurisdiction for only one Plan year — from July 1, 2012 until July 1, 2013 at Local 38. Compl. ¶ 12. Under the terms of the Local 38 Pension Plan, his July 1, 2013 "break in service"[1] caused him to forfeit any potential accumulated benefits or vesting credits he had in the Local 38 Plan. Dkt. #54-9, p. 15, Art. V, Sec. 1(e); *id.* at Art V, Sec. 2. To be eligible to receive any Local 38 Plan benefits, *i.e.*, to have a right to "vested" benefits, a Participant must have accumulated five or more years of Vesting Credited Service. *Id.* at pp. 13-14, Art. IV. Between July 1, 2012 and July 1, 2013 Mr. Norris had accumulated only one Year of Vesting Credited Service. Compl. ¶ 12. Mr. Machi informed Mr. Norris' attorney, Richard J. Birmingham, that, as a temporary employee or "Traveler," pension contributions made on Mr. Norris' behalf while working in Local 38's jurisdiction were transferred to his Home Pension Fund in accordance with the U.A. Pension Fund Reciprocal Agreement ("Reciprocal Agreement"). Dkt. #54-8, p. 4.

The Reciprocal Agreement provides that any potential dispute about the amount of employer pension fund contributions transferred on Mr. Norris' behalf from the Local 38 Plan to the U.A. Local 17 Pension Fund (his "Home Fund") must be addressed by his Home Fund. *Id.* at pp. 2-3. Mr. Norris has no rights under the Reciprocal Agreement, he is not a party to the

---

[1] The Local 38 Plan at Article V, titled "Breaks In Service," states, in pertinent part:

> In determining whether or not service is broken, the rule shall be that service is broken at the end of any two (2) consecutive Plan Year periods during which the Employee fails to work a total of at least 575 hours for one or more Employers.

Dkt. #54-9, p. 14, Art. V, Sec. 1(a).

Reciprocal Agreement, nor is he a third-party beneficiary under the term of that agreement. *Id.*; Dkt. #54-2, p. 5, Secs. 9, 11.

Mr. Machi also informed Mr. Birmingham that Mr. Norris did not qualify as a participant under the terms of the Local 38 Pension Plan. Dkt. #54-8, pp. 5-6. As a temporary Local 38 employee, Mr. Norris had no right to enforce the terms of the Local 38 Plan. Dkt. #54-2, p. 5, Sec. 9. As a Traveler, Mr. Norris had no hours of "Contributory Service,"[2] as that term is defined in the Local 38 Pension Plan. Dkt. #54-9, p. 13, Sec. 1.o.3. Travelers do not perform work for which contributions are "required to be made" to the Local 38 Pension Plan. *Id*. at pp. 13-14. Employer pension contributions for the hours worked by Travelers are required to be transferred to the Traveler's Home Pension Plan. Dkt. #54-2, pp. 2-4.

Mr. Norris testified he stopped working within Local 38's jurisdiction on July 1, 2013. Norris Depo. 24:11-13. He has therefore incurred a multi-year Break-in-Service. Dkt. #85, ¶ 2. Because Mr. Norris has incurred a break-in-service he is not a Local 38 Plan participant. *Id*. at ¶¶ 2-3. Mr. Norris has no claim to Local 38 "Participant" status even as a non-Traveler.[3] If it is assumed that Mr. Norris was a Local 38 Plan member during one Plan Year, the consequence of his July 1, 2013 "Break-in-Service" is that he "cease[s] to be a Participant in the Plan and his accumulated benefit and vesting credits in the Plan shall be forfeited . . ." Dkt. #54-9, p. 15, Art. V, Sec. 1(e), Dkt. #85, ¶ 2. Mr. Norris has not accumulated the five Plan Years needed to have vested benefits. (Local 38 Plan, Art. IV "Vesting"), Dkt. #85, ¶¶ 4, 10. His Break-in-Service has required Mr. Norris to forfeit any benefit accruals or vesting credits he had in the Plan. *Id.* at ¶ 3. Mr. Norris was invited to appeal the July 23, 2015 denial of his claim to the Local 38 Plan's

---

[2] "Contributory Service" is defined by the Local 38 Plan to mean "service for one of the defined Employers subsequent to July 1, 1955 **as an Employee performing work for which contributions are required to be made to this Pension Plan**." Dkt. #54-9, p. 13, Art. I.o.3.

[3] Arguably, Travelers, like Mr. Norris, have no hours of contributory service and therefore accrue no benefits under the terms of the Local 38 Plan.

> "**Contributory Service**" is defined by the Local 38 Plan to mean:
> **[S]ervice for one of the defined Employers subsequent to July 1, 1955 as an Employee performing work for which contributions are required to be made to this Pension Plan.**

Between July 1, 2012 and July 1, 2013, Mr. Norris accumulated zero hours of "Contributory Service." The Local 38 pension contributions made on his behalf were "required" to be transferred to his Home (Local 17) Pension Fund, not to Local 38's Pension Plan. Dkt. #54-2, pp. 3-4, Sec. 3.

Board of Trustees. Dkt. #54-8, pp. 7-8. Mr. Machi directed Mr. Norris to Art. XX, Section 3 of the Plan detailing the claims appeal process. *Id*. A copy of the Plan, the Trust Agreement, and the Collective Bargaining Agreement were enclosed with the July 23, 2015 letter. Dkt. #54-9, p. 9 to #54-10, p. 23 (Plan); #54-10, p. 26 to #54-12, p. 9 (Trust); #54-12, pp. 11-109 (CBA).

**F. Mr. Norris' Attorney Short-Circuited The Plan's Claim Review Procedure**

Mr. Birmingham responded on behalf of Mr. Norris on July 30, 2015 ("July 30th Letter") raising eight additional questions. Dkt. #54-13. Mr. Birmingham claimed in that letter Mr. Norris' December 2, 2014 letter asking for 20 types of documents somehow constituted a claim for Local 38 Pension Plan benefits. *Id.* He further asserted the Local 38 Plan's purported failure to fully respond to Mr. Norris' December 2, 2014 letter seeking documents showed that the Local 38 Plan had violated the time limits in the Plan's claim review procedure. *Id.* As such, he asserted, Mr. Norris' claim should be deemed exhausted. *Id.*

**G. The December 2, 2014 Letter Made No Claim For Benefits**

Mr. Machi responded to Mr. Birmingham on August 6, 2015, explaining that Mr. Norris' December 2, 2014 letter had made no claim for Local 38 Pension Plan benefits. Dkt. #54-14, p. 2. The December 2, 2014 letter asked for documents not Plan benefits. *Id.*, *See also* Dkt. #54-3. Because Mr. Norris did not ask to receive any Plan benefits, his December 2, 2014 letter could not be considered a claim for Plan benefits. Dkt. # 54-14, p. 1. Mr. Machi explained:

> Any fair reading of Mr. Norris's December 2, 2014 letter indicates he is seeking twenty (20) separate categories of documents. There is no claim for any plan benefits contained in Mr. Norris's December 2, 2014 letter. The. first time Mr. Norris asked for additional plan benefits was on June 23, 2015 when he asked for the immediate transfer of any pension contributions "withheld and not transferred" to the Local 17 Plan. Mr. Norris cannot exhaust the Plan's claims review procedure before he files a claim for plan benefits with the Plan Administrator.
>
> Department of Labor Regulations Section 2560.503-1(e) defines "claim for benefits" as being "a request for a plan benefit or benefits. . ." On December 2, 2014 Mr. Norris did not ask for any plan benefit. He asked for documents. Mr. Norris's assertion that he is somehow excused from following the Plan's reasonable claims procedure is, at best, mistaken. *See* 29 C.F.R. § 2560.503-1(1).

*Id.* Mr. Machi also responded to the eight additional questions contained in Mr. Birmingham's July 30th Letter. *Id.* at p. 2.



Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

### H. Mr. Norris Appeals The Denial of His Claim

On September 15, 2015, Mr. Norris' attorney sent a letter to the Plan Administrator identified in the Re: line as a "Claim Appeal — Brad Norris." Dkt. #54-15. The primary argument advanced by Mr. Norris was as follows:

> However, because Mr. Norris is vested under a Related Plan, the break-in-service rule is not applicable. *See*, Article XI and Article V, Section 1(e). Because such service cannot be forfeited, due to Mr. Norris's status as vested in a Related Plan, Mr. Norris continues to be a Participant under the terms of the Local 38 Plan.

*Id.* at p. 3. Mr. Norris also claimed "all contributions on his behalf should have been transferred to his Home Fund pursuant to the Reciprocal Agreement . . ." However, the letter failed to provide the specific information required for appeals as required under Article XX, Section 3 of the Plan. Dkt. #54-8, pp. 7-8. Article XX, Section 3 of the Local 38 Plan requires an individual filing an appeal to file a statement in writing containing an explanation of each ground on which the decision appealed from was in error, a list of each document upon which the Claimant relies, as well as a list of the names of any witnesses together with a short statement of the facts to which each person is expected to testify. Although Mr. Norris claimed he was vested because he was a Participant in a Related Plan, he provided no explanation for this assertion or documents in support of that claim. Similarly, Mr. Norris failed to explain how the Reciprocal Agreement entitled him to additional pension transfers to his Home Fund or documents supporting this claim. On October 13, 2015, Mr. Birmingham followed up on his September 15th letter asking for an update on the status of Mr. Norris' "appeal." Dkt. #54-16.

### I. Mr. Norris Was Given Additional Time To Cure His Defective Appeal

The Plan Administrator timely responded on October 15, 2015 ("October 15th Letter"). Dkt. #54-17 to 54-19. The October 15th Letter informed Mr. Norris his "appeal" of the denied claim could not be processed "because necessary information has not yet been provided." Dkt. #54-17, p. 2. Mr. Machi stated:

> Together with the Notice of Appeal, a claimant shall file with the Trustees a statement in writing containing the following additional information:
>
> 1. A statement as to each ground on which claimant believes the decision or other action appealed from to have been in error;

SFODMS/67615590



Baker & McKenzie LLP
Two Embarcadero Center, 11th Floor
San Francisco, CA 94111
+1 415 576 3000

> 2. A list of the names and addresses of each person on whose testimony claimant will rely, in whole or in part, in support of the appeal, together with a short statement of the facts to which each such person is expected to testify; and
>
> 3. A list of each document upon which claimant will rely in support of the appeal.

*Id.* at p. 3.

Mr. Machi informed Mr. Birmingham that the required information must be submitted to the U.A. Local 38 Plan Trustees before Mr. Norris' appeal could be properly processed. *Id.* at p. 2. Mr. Norris was given until October 30, 2015 to correct and finalize his appeal. *Id.* at p. 3.

**J. Mr. Norris Abandons The Appeal Process**

Mr. Birmingham responded on October 27, 2015. Dkt. #54-20. He refused to conform Mr. Norris' appeal to the information requirements set forth in Plan Article XX, Section 3. *Id.* He mistakenly claimed he could ignore this appeal requirement because all of this information must already be in the Plan's possession. *Id.* at p. 1. But the grounds for and the evidence supporting Mr. Norris' appeal were not provided. Mr. Norris did not explain how the Reciprocal Agreement trumped the terms of the Local 38 Plan. Nor did Mr. Norris identify any documents supporting his claim that he was a Participant in a "Related Plan." Mr. Birmingham simply claimed it was up to the Plan to fill in any missing information. Mr. Norris' "appeal" also omitted his own personal identifying information. According to Mr. Birmingham, the Local 38 Trustees' request that he complete his appeal showed the Local 38 Trustees' "bad faith" aimed at "impeding" his client's appeal rights. *Id.* He concluded the Trustees had failed to timely process Mr. Norris' appeal or timely schedule a hearing. *Id.* "As such, we view that we have exhausted administrative remedies," he asserted. *Id*. Mr. Birmingham said Mr. Norris planned to file a lawsuit, but offered to dismiss the lawsuit on condition that the Local 38 Trustees "subsequently decide the appeal and agree with our allegations." *Id.* One day after his October 27, 2015 letter refusing to follow the Local 38 Plan's appeals process, Mr. Norris filed his putative class action ERISA Complaint.

### K. The Local 38 Trustees Responded By Urging Mr. Norris To Return To The Appeal Process

On November 23, 2015, counsel for the Local 38 Plan Trustees responded to Mr. Birmingham's October 27, 2015 letter stating: "The Plan Trustees urge Mr. Norris to dismiss his premature lawsuit and re-enter the claims review process." Dkt. #54-21, p. 2. On December 7, 2015 Mr. Birmingham responded and repeated his assertion that the Plan's failure to timely schedule a hearing on Mr. Norris' appeal meant the claims review process was unreasonable. Dkt. #54-22.

### L. The Instant Litigation

Mr. Norris filed a putative class action ERISA Complaint on October 28, 2015. Mr. Norris alleged four claims for relief: (1) for Plan benefits under 29 U.S.C. section 1132(a)(1)(B); (2) claim for breach of fiduciary duty under 29 U.S.C. section 1132(a)(2); (3) for an alternative breach of fiduciary duty claim arising under 29 U.S.C. section 1132(a)(3); and (4) for statutory penalties under 29 U.S.C. section 1132(c)(1). Defendants filed their Answer to Mr. Norris' putative ERISA Class Action Complaint on May 4, 2016. Defendants asserted 26 different affirmative defenses. Some of these defenses are at issue in this Motion, including the failure to exhaust available administrative remedies (First Affirmative Defense); no standing (Eleventh Affirmative Defense); no statutory standing (Twelfth Affirmative Defense); the fiduciary claim is barred because Plaintiff seeks individualized relief (Seventh Affirmative Defense); the equitable claim for breach of fiduciary duty is barred because Plaintiff has an adequate remedy at law (Tenth Affirmative Defense); no standing to sue under Article III (Fourteenth Affirmative Defense), any fiduciary decisions being challenged are subject to review only for abuse of discretion (Twenty First Affirmative Defense); and the claim for statutory penalties under ERISA section 502(c)(1) is barred because Defendant Machi committed no misconduct, acted in good faith, and because Plaintiff admitted he was not prejudiced by the delay in providing him with documents.

Mr. Norris was deposed on July 21, 2016. The dispute is now before this Court on cross-motions for summary judgment.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

## III. LEGAL ARGUMENT

### A. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 324). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B. Mr. Norris Lacks Article III Standing

Mr. Norris has not applied for nor has he been denied any Local 17 Plan benefits. Norris Depo. ¶ 53:21-54:2. Mr. Norris may not be owed any damages.[4] Mr. Norris seeks an advisory opinion. *S.D. Myers, Inc. v. City and County of San Francisco,* 253 F.3d 461, 476 (9th Cir. 2001) ("deciding Myers's claim under ERISA would be to render an unconstitutional advisory opinion.")

Where redress of a plaintiff's harms depends on independent decisions of third parties who are not a party to the pending lawsuit, standing does not exist. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 568-71 (1992). Whether Norris' future Local 17 Pension benefits will be reduced

[4] Mr. Norris is not eligible for Local 38 Plan benefits because he is not a Local 38 Plan participant. Dkt. #83, pp. 7-14.

due to the Local 38 Trustees' action, depends on a future decision by an independent entity - the Local 17 Trustees - that this court cannot control or predict. "There is no redressability, and thus no standing, where . . . any prospective benefits depend on an independent actor who retains 'broad and legitimate discretion the courts cannot presume either to control or to predict.'" *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) (quoting *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615 (1989)).

Mr. Norris has admitted the Local 17 Plan does not run the risk of default due to Local 38's purported Traveler contribution failures. Norris Depo. 103:22-104:1. A defined benefit plan "consists of a general pool of assets rather than individual dedicated accounts." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999); *see also* ERISA § 3(35); 29 U.S.C. § 1002(35). Under a defined benefit plan, the employer "typically bears the entire investment risk" and therefore "must cover any underfunding as the result of a shortfall that may occur . . ." *Hughes*, 525 U.S. at 439. "Given the employer's obligation to make up any shortfall, no plan member has a claim to any particular asset that composes a part of the plan's general asset pool." *Id.* at 440. Instead, participants have a right only to "a certain defined level of benefits" payable upon retirement. *See id*. Because of this unique structure, "[m]isconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan." *LaRue*, 552 U.S. at 255.

In *Hughes Aircraft*, the Supreme Court explained that participants in a defined benefit plan "have a right to a certain defined level of benefits . . ." *Hughes*, 525 U.S. at 440. Short of plan termination, the benefits that participants receive have nothing to do with the "general pool of assets" in the plan - "the employer typically bears the entire investment risk and . . . must cover any underfunding as the result of a shortfall that may occur . . ." *Id.* at 439. Accordingly, participants in a typical defined benefit plan have no interest whatsoever in the assets underlying the plan. *See id.* at 440. Mr. Norris' Complaint seeks a transfer of assets from the Local 38 Plan to the Local 17 Plan. Compl., Prayer for Relief at ¶ 8, p. 11. As the Supreme Court has recognized, an alleged fiduciary breach might impact a participant's defined benefit only if the breach "creates or enhances the risk of default by the entire plan." *LaRue*, 552 U.S. at 255. Accordingly, standing

exists where an alleged fiduciary breach gives rise to an actual or imminent risk of default by the plan. But, Mr. Norris' own testimony is directly to the contrary.

Local 38's alleged actions have, at most, not increased Local 17's Plan assets. And if a plan "becomes underfunded, the [employer] will be required to make additional contributions." *David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013). Accordingly, a reduction in a plan's general asset pool does not in itself have any impact on plan participants; it "merely increases the relative likelihood that [the plan sponsor] will have to cover a shortfall." *Lee v. Verizon Commc'ns, Inc.*, 623 F. App'x 132, 149 (5th Cir. 2015). Absent any showing that the Local 17 Plan might be unable to cover such a shortfall, there is no concrete threat or injury to Mr. Norris' benefits. His own testimony confirms he has no Article III standing.[5]

**C. Mr. Norris Is Not A Local 38 Plan Participant**

To make a claim for damages pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), a former employee, like Mr. Norris, must establish that he has a "reasonable expectation of returning to covered employment" or "'a colorable claim' to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989), (quoting *Kuntz* v. *Reese*, 785 F. 2d 1410, 1411 (9th Cir.) (per curiam), *cert. denied*, 479 U. S. 916 (1986)). But Mr. Norris fails to establish either. *See* Oppn. to Norris MSJ at pp. 9-16.

Mr. Norris' one year of service in Local 38's jurisdiction followed by a multi-year Break-in-Service does not give him an unconditional right to any benefits under the terms of the Local 38 Plan. There are only two ways a covered employee's benefits can vest in the Local 38 Plan. The first is by meeting the vesting requirements of Article IV of the Plan, which provides the covered employee "accumulates five (5) or more years of Vesting Credited Service." (Dkt. # 54-9 at 4-5, Art. IV.) The second is under the Rule of Parity and I.R.C. § 411(d)(3), which provides a

---

[5] The Declaration of Linda Tidwell, an administrative office employee for the U.A. Local 17 Pension Plan, does not state Local 38's failure to transfer additional contributions on behalf of Mr. Norris enhances the risk of default by the Local 17 Pension Plan. Secondly, Ms. Tidwell is not the Plan Administrator. Because she is not a plan fiduciary, she has no authority to bind the Local 17 Pension Plan to anything. Third, her speculation about the amount of Mr. Norris' future Local 17 Retirement Plan benefits is just that. In the National Pension Fund arbitration, the National Pension Fund Administrator testified the National Pension Fund credited NPF Travelers with any missing full rate contributions from Local 38. Baker Decl. ¶ 4, Ex. A.

terminated employee's unvested benefits will become vested if the employee's opportunity to return to covered employment is extinguished due to the termination of the retirement plan. ERISA § 203(b)(3)(D), 29 U.S.C. § 1053(b)(3)(D) ("Rule of Parity"). Norris meets neither test.

The vesting of benefits under the Rule of Parity was explained by the Ninth Circuit in *Flanagan*, 3 F.3d 1246. In *Flanagan*, the issue of standing turned on whether a former employee's conditional protections under the Rule of Parity were "cut short" by the plan's termination. *Id.* Mr. Norris is not a Local 38 Participant because he has no claim to any vested Local 38 Plan benefits. His accrued benefits and vesting credits in the Local 38 Plan were forfeited by his multi-year break-in-service. The Rule of Parity does not apply because his eligibility for Local 38 Plan benefits was not "cut short" by the Plan's termination. *Id.* at 1251.

**D. Mr. Norris Failed To Exhaust The Plan's Administrative Remedies**

While the ERISA statute itself does not articulate an exhaustion requirement, courts have consistently held that plaintiffs must exhaust the plan's internal claim review procedures before filing suit under ERISA section 502, 29 U.S.C. § 1132. *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008) (quoting *Diaz v. United Agr. Employee Welf. Benefit Plan*, 50 F.3d 1478, 1483 (9th Cir. 1995)). The exhaustion doctrine serves several important policy considerations, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a non-adversarial method of claims settlement, the minimization of costs of claim settlement, and a proper reliance on administrative expertise. *Diaz*, 50 F.3d at 1483 (citing *Amato v. Bernard*, 618 F.2d 559, 566-68 (9th Cir. 1980)). Mr. Norris failed to comply with the Plan's internal review procedures and hence did not exhaust the available administrative remedies. [6]

---

[6] Article XX of the Local 38 Plan titled, "Claims Procedures" at **Section 2(a)** provides in pertinent part:

> In the event a Participant or Beneficiary has a dispute of any kind with the Plan, the Plan Administrator or the Plan's fiduciaries, the Participant or Beneficiary must file a written request for review with the Plan Administrator.
>
> All Plan claims for review must be made in the manner provided below. No arbitration or any other legal action can be commenced until the Participant or Beneficiary has first exhausted the claims and review procedures provided under the Plan.

#### 1. Mr. Norris Never Made A Claim For Benefits

Mr. Norris never filed a claim for benefits as required under the Plan.[7] Dkt. #54-10, pp. 14-15, Art. XX, Secs. 1 & 2. Mr. Norris erroneously attempts to avoid the exhaustion requirement by arguing his December 2, 2014 letter, which merely requested documents, was a claim for Plan benefits. His December 2014 letter simply stated:

> In accordance with my rights under ERISA as a participant in the Local 38 Pension Plan, I am requesting copies of the following documents be sent to my home address . . .

Dkt. #54-3, p. 2.

No benefit is described or referenced in the letter. An "adverse benefit determination" can only follow the filing of a claim for Plan benefits. 29 C.F.R. § 2560.503-1(e) defines "Claim for Benefits" as being "**a request for a plan benefit or benefits**[8]. . . ." 29 C.F.R. § 2560.503-1(m)(4), for its part, defines the term "adverse benefit determination" to mean "any of the following: **a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit** . . ." Without a claim for Plan benefits, the claims denial review procedures were not triggered. The December 2, 2014 letter does not "request a Plan benefit."

None of the cases Mr. Norris cited in his Opposition to Local 38's Motion to Dismiss support his assertion that a request for plan documents can be deemed a claim for plan benefits. For example, *Bard v. Boston Shipping Ass'n*, 471 F.3d 229 (1st Cir. 2006) involved the denial of Mr. Bard's claim for disability benefits. While Mr. Bard's disability claim examined his eligibility for plan benefits, it did not involve a request for plan documents. *See id.* at 232-34. Nor did the *Bard* court find that a request for plan documents was a claim for plan benefits.

The other cases Mr. Norris relies on, *Chavis v. Life Insurance Co. of N. Am.*, 2009 WL 4730643 (D.S.C. Dec. 8, 2009), is of the same stripe. Dkt. #56. *Chavis* involved a claim for short

---

Dkt. #54-10, p. 15.

[7] Local 38 Plan Article XX, Section 8 titled, "Exhaustion or Remedies," states:

> A claimant must exhaust his remedies under the foregoing procedures as a condition precedent to the commencement of any suit.

Dkt. #54-10, p. 19.

[8] Emphasis supplied unless otherwise indicated.

term and long term disability benefits. The court did not consider an assertion that a request for plan documents was a claim for plan benefits. *Bechtol v. Marsh & McLennan*, 2008 WL 23588 (W.D. Wash. Jan. 28, 2008) involved a claim for supplemental executive retirement plan benefits. There is no discussion of transforming a request for plan documents into a claim for plan benefits.

The ERISA case law on this issue is directly contrary to Mr. Norris' position. The assertion that a request for plan documents constitutes an appeal of a denied claim for plan benefits was rejected by the Seventh Circuit in *Edwards v. Briggs & Stratton Retirement Plan*, 639 F.3d 355 (7th Cir. 2011). The *Edwards* Court stated that a letter from the claimant to the plan, requesting documents and stating the claimant would "decide whether or not to appeal" after receiving the documents, was not an appeal. *Id.* at 364. A subsequent letter from claimant's counsel to the plan requesting plan documents and indicating the claimant would bring an appeal of the denied claim "soon," may have expressed an intention to appeal, but again was not itself an appeal. *See id.* Affirming summary judgment in favor of the plan, the Seventh Circuit held the claimant failed to exhaust her administrative remedies because she failed to submit a timely administrative appeal. *See id.*; *see also ADA v. Wellpoint Health Networks, Inc.*, 494 F. App'x 43, 46 (11th Cir. 2012) (holding plaintiff failed to initiate administrative appeal where letter to insurer did not challenge partial denial of benefits or request any kind of review, but merely sought information about claim decision); *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1018-19 (5th Cir. 2009) (holding plaintiff failed to exhaust administrative remedies where letter to plan that "merely expressed an 'intention to appeal'" was not itself an appeal).

In *Reindl v. Hartford Life & Accident Ins. Co.*, 705 F.3d 784, 788 (8th Cir. 2013), claimant's counsel sent a letter to the insurer's benefit management services department rather than the appeal unit. The letter failed to outline any issues on appeal as directed, requested "any and all medical records." The letter observed counsel "will be reviewing" information "for [the] client's appeal." The court concluded the insurer reasonably construed Reindl's letter to be a mere request for documents rather than an appeal. *See* Affirming summary judgment for the insurer, the court held counsel's subsequent letter to the insurer's appeal unit requesting reversal of the claim

decision was late and, therefore, claimant failed to exhaust her administrative remedies. *See id.* at 786, 788.

### 2. Mr. Norris Abandoned His September 15, 2015 Appeal

Mr. Norris' assertion that his September 15, 2015 "appeal" was not timely decided because the Board of Trustees sought additional information from him, is contrary to controlling Ninth Circuit precedent. In *Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461 (9th Cir. 1997), the Circuit Court ruled:

> "What we got here," said Strother Martin, "is a failure to communicate." [footnote omitted] This is an all-too-common occurrence when ERISA-covered health benefit plans deny claims. While a health plan administrator may — indeed must—deny benefits that are not covered by the plan, it must couch its rulings in terms that are responsive and intelligible to the ordinary reader. *See* 29 C.F.R. § 2560.503-1(f). If the plan is unable to make a rational decision on the basis of the materials submitted by the claimant, it must explain what else it needs. *Id.* If ERISA plan administrators want to enjoy the deference to which they are statutorily entitled, they must comply with these simple, common-sense requirements embodied in the regulations and our caselaw. The plan here did not.

*Id.* at 1465. *Accord, Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 870 (9th Cir. 2008). Local 38 tried to enter into a meaningful dialogue with Mr. Norris about his appeal because Mr. Birmingham's September 15th letter did not properly explain the grounds or evidence supporting his appeal. Dkt. # 54-15, pp. 2-4. In response to the September 15th letter, Local 38 copied and pasted the entire appeal procedure process into the body of a letter dated October 15th and invited Mr. Norris to supplement his appeal. Mr. Norris was provided with two additional weeks to correct his appeal. Dkt. # 54-17, pp. 2-3. Local 38's rules required Mr. Norris to properly identify himself, the grounds supporting his claim, his witnesses, documents and to specifically explain what parts of the Plan were being violated and how he was being harmed. *Id.* Mr. Norris refused to comply. Dkt. # 54-20, pp. 2-3. Mr. Norris failed to identify himself, the grounds supporting his appeal, if he had any supporting witnesses or documents, which are required under Article XX, Section 3 of the Plan. Dkt. ##54-21, pp. 4-5, 54-10, pp. 16-17, Art. XX, Sec. 3. Mr. Norris refused to timely complete his appeal. Dkt. #54-22, p. 2.

Accordingly, his failure to timely complete his appeal means his lawsuit must be dismissed. *Diaz*, 50 F.3d at 1483, 1486; *Sarraf v. Standard Ins. Co.*, 102 F.3d 991, 993 (9th Cir. 1996).[9]

**3. Norris Has Failed To Adequately Plead Futility**

Mr. Norris' speculative conclusion that his appeal would be denied does not satisfy the futility standard. Dkt. #56, pp. 29-31. Although Mr. Norris complains he was singled out and made to follow the appeal procedures, no facts support this claim.[10] Lacking any evidence to support his futility claim, Mr. Norris falls back on the irrelevant NPF Arbitration decision. Dkt. #56, p. 30, ll. 17-25. First, the NPF Arbitration Award against Local 38 proves reference to arbitration is not a futile exercise as the NPF prevailed. Second, the NPF Arbitration is completely irrelevant. It involved different parties to a different contract and applied California law, not ERISA. NPF sought recovery for a pension fund and not for any specific individual. *See, generally, Trustees of the U.A. Local 38 Defined Benefit Pension Plan v. Trustees of the Plumbers and Pipe Fitters National Pension Fund*, No. 4:15-cv-04703-YGR (filed on Oct. 9, 2015) ("*NPF Litigation II*"), Dkt. #43. Finally, Norris' claim that exhaustion is not required for statutory claims fails because, as shown above, his fiduciary breach claims each fail factually and legally. There can be no futility, and no certain denial of a claim, where, as here, the Plan provides for binding arbitration[11] of disputes by an independent third party.

---

[9] Local 38 Plan Article XX, Section 3 gives claimants 60 days after receipt of notice of the claim denial to file an appeal.

> The failure to file a written notice of appeal within the time period prescribed will operate as a complete waiver and will bar claimant's right to appeal, and the decision or other action of the Trustees will be final.

Dkt. #54-10, p. 17.

[10] The only evidence cited by Norris is a statement by counsel for Local 38 that during the past three years, other than Norris, there was only one other appeal. Dkt. # 57, ¶ 10.

[11] A Local 38 participant "may" bring an arbitration if he or she "is dissatisfied with the written decision of the Trustees." Dkt. #54-10, p. 19, Art. XX, Sec. 7(b). Use of the word "may" in a collectively bargained arbitration provision, as here, does not render the arbitration provision permissive. *Collins v. Burlington Northern Railroad Co.*, 867 F.2d 542, 543-44 (9th Cir. 1989); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 204 n.1 (1985) ("[t]he use of the permissive 'may' is not sufficient to overcome the presumption that parties are not free to avoid the contract's arbitration procedures."); *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 347 (2005) and *Gutierrez v. Wells Fargo Bank*, 704 F.3d 712, 718-20 are irrelevant as they are not collective bargaining cases.

### D. Other Legal Impediments Bar the Claims

#### 1. Norris' Fiduciary Breach Claims Have No Merit

Mr. Norris' breach of fiduciary duty claim in Count II arising under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2) fails. Mr. Norris testified the Local 38 Plan was "unjustly enriched" by not transferring his alleged Traveler contributions. Norris Depo. 50:5-16. ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2) allows suit by a participant "for appropriate relief under Section 409." ERISA section 409, 29 U.S.C. § 1109 titled, "Liability for Breach of Fiduciary Duty," states that breaching fiduciaries may be made liable "to make good to such plan any losses to the plan resulting from each such breach . . ." ERISA holds a trustee liable for a breach of fiduciary duty only to the extent that losses to the plan result from the breach. ERISA section 409, 29 U.S.C. § 1109; *Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir. 1982) (Section 1109 "clearly indicates that a causal connection is required between the breach of fiduciary duty and losses incurred by the plan." *Friend v. Sanwa Bank California*, 35 F.3d 466, 469 (9th Cir. 1994). Mr. Norris does not seek a recovery for plan losses. He testified the Local 38 Plan was "unjustly enriched." Norris Depo. 50:5-16. He does not claim the Local 38 Plan even suffered any losses. Nor can he show a causal connection between any alleged fiduciary breach and Local 38 Plan losses. *Allison v. Bank One — Denver*, 289 F.3d 1223, 1239 (10th Cir. 2002) ("The phrase 'resulting from' indicates that there must be a showing of 'some causal link between the alleged breach ... and the loss plaintiff seeks to recover.'").

Mr. Norris prays for Plan benefits or for "contributions" plus "earnings." Compl., Prayer for Relief, ¶ 8, p. 11. But ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2) does not permit a participant to sue a plan fiduciary for plan benefits or for monetary damages. *Mertens*, 508 U.S. at 255-56; *Mass. Mut. Life Ins. v. Russell*, 473 U.S. 134, 146-47 (1985). If Norris prevails, his recovery would involve an award of Plan benefits or a transfer of employer pension contributions from Local 38's Pension Plan to the Local 17 Pension Plan. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries." *LaRue*, 552 U.S. at 256.

Mr. Norris' Third and Fourth claims, seek "make-whole monetary relief" pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3). Section 502(a)(3)(B) of ERISA permits a participant or beneficiary to bring a civil action "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B). Thus, the complaining party must seek "equitable, rather than legal, relief." *Reynolds Metals Co. v. Ellis,* 202 F.3d 1246, 1247 (9th Cir. 2000). In assessing whether a claim for "equitable" relief has been properly brought under ERISA, we look to the "substance of the remedy sought . . . rather than the label placed on that remedy." *Matthews v. Chevron Corp.*, 362 F.3d 1172, 1185 (9th Cir. 2004) (citations and internal quotation marks omitted).

Mr. Norris seeks "up to" $110/day statutory penalty in Claim IV — clearly monetary damages. Claim III seeks monetary relief for "unjust enrichment." In *Skinner v. Northrop Grumman Retirement Plan B,* 673 F.3d 1162, 1165 (9th Cir. 2012), the Court of Appeal explained that in order to have the equitable remedy of "surcharge" to cure unjust enrichment a plaintiff must show a loss to the plan resulting from the breach of fiduciary duty. *Id.* at 1167. Again, Mr. Norris admitted the Local 38 Plan suffered no losses. Both of these claims are foreclosed by Supreme Court precedent. The Court has held that the term "equitable relief" in Section 1132(a)(3) "must refer to 'those categories of relief that were *typically* available in equity . . . .'" *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210 quoting *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 256 (1993). In *Mertens*, the Court held that participants who sued their pension plan's actuary for breach of its fiduciary duties could not seek relief pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), because their claims sought "monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties" which is the "classic form of *legal* relief." 508 U.S. at 255 (stating that "[a]lthough they often dance around the word, what petitioners in fact seek is nothing other than compensatory *damages*"). *Id.* Similarly, here, Norris improperly requests that Local 38 make him "whole in the amounts by which [his] pension benefits have been reduced as a result of [alleged] breaches." *Paulsen v. CNF Inc.,* 559 F.3d 1061, 1076 (9th Cir. 2009). As in *Mertens,* Norris' claim for "make-whole monetary relief" seeks money damages, which fall outside of the remedy provisions of ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3).

Moreover, relief may be granted under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), only if relief is not available under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997). Mr. Norris concedes elsewhere that Claims I and III, his Section 502(a)(1)(B) and 502(a)(3) claims, are in the "alternative." Compl., ¶ 53, p. 10. Dkt. #56, p. 19, ll. 6-9. As Defendants explained in their Opposition to Mr. Norris' Motion for Summary Judgment, Mr. Norris' claim for Local 38 Plan benefits fail because he does not qualify as a Local 38 Plan Participant. Dkt. #83, pp. 7-16. Defendants also explain in their Opposition to Mr. Norris' Motion for Summary Judgment that his claims for statutory penalties under ERISA section 502(c)(1) fail because he is not a Local 38 Plan Participant, because Mr. Machi acted in good faith, and because Mr. Norris, by his own admission, was not prejudiced in connection with the document dispute. *Id*. at 24-25. His claim for breach of fiduciary duty for failing to provide documents must therefore be dismissed.

Mr. Norris then asserts Local 38's SPD appeal language somehow trumps the appeal provisions in the Plan. *See* Dkt. #56, p. 26, ll. 10-20. But, the Supreme Court has ruled ERISA enforces plan language, not SPD language. *Cigna v. Amara*, 131 S.Ct. 1866, 1878 (2011). Because the Local 38 SPD and Plan are combined into one document, he has no basis to complain he was mislead. Dkt. ##60-1, ¶ 3, 60-2, p. 2. ERISA § 102, 29 U.S.C. § 1022; *see also* 29 C.F.R. § 2560.503-1. Finally, an SPD's statement, as here, that "a description of the plan's appeal procedures" will be included with the claim denial letters incorporates those appeal procedures into the summary plan description, bringing it into compliance with ERISA's notice requirements. *See Vaught v. Scottsdale Healthcare Corp. Health Plan,* 546 F.3d 620, 627 (9th Cir. 2008).[12]

**2. The Abuse of Discretion Standard Bars His Claim**

Local 38 "ha[s] the sole and absolute discretion to construe and to interpret the provisions of the Plan." Local 38 Plan Article XXI, Section 1 Administration states in pertinent part:

> The Board of Trustees shall have the sole and absolute discretion to

---

[12] *Spindex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1298 (9th Cir. 2014) does not support Norris' claim. That decision addressed plan language--not SPD language. The *Spindex* court also ruled that non-absolute Plan language, *i.e.* "encourage[ing]" completion of the complaint process, did not require exhaustion. *Id.* at 1299. Local 38's Plan language states the claims review process is mandatory. Dkt. #54-10, p. 15, Art. XX, Sec. 2(a).

> construe and to interpret the provisions of the Plan. **The Board of Trustees shall determine the rights and status of Participants and other persons under the Plan**, make factual findings with respect to any issue arising under the Plan, decide disputes arising under the Plan and make any determinations and findings (including factual findings) with respect to the benefits payable thereunder **and the persons entitled thereto** as may be required for the purposes of the Plan, including, but not limited to, **determining an Employee's Service under the Plan and the eligibility for Plan participation of an Employee**. . . .

Dkt. #54-10, p. 33, Art. XX, Sec. 1. This Plan provision gives the Trustees the power to exercise discretion in determining "eligibility for Plan participation of an Employee . . ." Under the abuse of discretion standard, *Firestone*, 489 U.S. at 115, Mr. Norris' abandoned appeal must be denied. The decision of the Plan Administrator denying his claim to be an eligible participant was based on a reasonable interpretation of the Plan and was made in good faith.[13] An ERISA Plan Administrator does not abuse his discretion unless the decision is "so patently arbitrary and unreasonable as to lack foundation in factual basis." *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1473 (9th Cir. 1993) (other citations omitted). The importance of applying the abuse of discretion standard to difficult decisions made by ERISA plan administrators was recently highlighted by the Supreme Court:

> People make mistakes. Even administrators of ERISA plans. That should come as no surprise, given that the Employee Retirement Income Security Act of 1974 is "an enormously complex and detailed statute," *Mertens v. Hewitt Associates*, 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), and the plans that administrators must construe can be lengthy and complicated. (The one at issue here runs to 81 pages, with 139 sections.) We held in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), that an ERISA plan administrator with discretionary authority to interpret a plan is entitled to deference in exercising that discretion. The question here is whether a single honest mistake in plan interpretation justifies stripping the administrator of that deference for subsequent related interpretations of the plan. We hold that it does not.

*Conkright v. Frommert*, 559 U.S. 506, 130 S.Ct. 1640, 1644 (2010). *Firestone* deference, the Court explained, protects and promotes "efficiency predictability, and uniformity" — the factors that keep administrative and litigation expenses in check and induces employers to offer ERISA benefit plans in the first place. *Id*. at 1649.

---

[13] Local 38 Plan SPD Q&A 22, pp. XVI and XVII, giving the Plan Administrator responsibility for deciding initial claims for Plan benefits.

### 3. Mr. Norris Cannot Enforce The Terms Of The Reciprocal Agreement

Mr. Norris admitted he had never seen the Reciprocal Agreement before his deposition. Norris Depo. 83:13-21. The Reciprocal Agreement is not referenced or mentioned in the Local 38 Plan. *See generally* Dkt. ## 54-9, p. 9 - 54-10, p. 23.

ERISA has an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations at any time, a scheme that is built around reliance on the face of written plan documents. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). Because ERISA section 402, 29 U.S.C. § 1102 provides that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument," courts have held that oral agreements or other modifications cannot be used to contradict or supersede the written terms of an ERISA plan. *Richardson v. Pension Plan of Bethlehem Steel Corp*., 112 F.3d 982, 986 (9th Cir. 1997). The ERISA writing requirement protects a plan's actuarial soundness by precluding plan administrators from contracting to pay benefits to persons not entitled to them under the express terms of the plan. *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992). Mr. Norris cannot rely on a document he has never seen (the Reciprocal Agreement) to enlarge his rights against the Local 38 Plan beyond what he could recover under the unambiguous written terms of the Plan itself. Paying Local 38 Plan benefits to temporary employees, like Mr. Norris, is contrary to the written terms of the Local 38 Plan and would reduce the financial health and actuarial soundness of the Local 38 Plan. Willson Decl. at ¶ 5.

## IV. CONCLUSION

There is no genuine dispute as to any material fact. In order to make a claim for Local 38 Plan benefits, Mr. Norris must first show he a Local 38 Plan Participant. He has not done so. His one year of Local 38 service does not vest any Local 38 Plan benefits. His claim for Participant status thus fails under the terms of the Local 38 Plan, ERISA's statutory commands, as well as controlling case law. Because Mr. Norris cannot show he was a Local 38 Plan Participant, Defendants are entitled to judgment as a matter of law on all four of Mr. Norris' claims brought under ERISA. Even if Mr. Norris is assumed to be a Participant, his lawsuit must be dismissed


Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

because he failed to exhaust the Local 38 Plan's administrative remedies. The fiduciary breach remedies Mr. Norris demands are not actionable under ERISA, nor are these remedies consistent with the terms of the Local 38 Plan. For these reasons, and for all the reasons set forth Defendants' Motion for Summary Judgment and its Opposition to Mr. Norris' Summary Judgment Motion, Defendants request this Court grant summary judgment in its favor and enter judgment in favor of Defendants on all claims.

Dated: September 8, 2016

**BAKER & McKENZIE LLP**

By: /s/ James P. Baker
James P. Baker

Attorneys for Defendants
Lawrence J. Mazzola, Jr.; Robert E. Buckley, Jr.; Armand Kilijian; Scott Strawbridge; Fred Nurisso; Daniel Orsot; Milt Goodman; Steve Jennings; William Blackwell; Frank Reardon; John Chiarenza; Tony Guzzetta; R.J. Ferrari, in their current or former capacities as trustees or fiduciaries of the United Association Local 38 Defined Benefit Pension Plan; Peter Machi, in his capacity as administrator of the United Association Local 38 Defined Benefit Pension Plan