1
2
3
4
5
6        UNITED STATES DISTRICT COURT
7        NORTHERN DISTRICT OF CALIFORNIA
8

9    ROBERT BRADLEY NORRIS,                    Case No.15-cv-04962-JSC
10            Plaintiff,
                                               **ORDER GRANTING FINAL**
11        v.                                   **APPROVAL**

12   LAWRENCE J. MAZZOLA, et al.,              Re: Dkt. No. 142
13            Defendants.

14

15        Plaintiff Robert Bradley Norris brought this putative class action on his behalf as well as

16   on behalf of similarly situated individuals under the Employee Retirement Income Security Act of

17   1974 ("ERISA") to recover withheld pension benefit contributions from Defendants, the Trustees

18   and Administrator of the Local 38 Plan at issue.  Plaintiff, a union plumber, participants in the

19   Local 17 pension plan in Memphis, Tennessee.  In 2012 and 2013, he worked in the Bay Area for

20   an employer who was a signatory to a collective bargaining agreement with Local 38.  Pursuant to

21   that agreement, his employer made pension plan contributions to the Local 38 pension plan;

22   however, Local 38 only transferred a portion of the contributions made on Plaintiff's behalf to his

23   Home Fund.  Plaintiff alleges that Local 38 violated ERISA in doing so.  On the parties' cross-

24   motions for summary judgment, the Court found in Plaintiff's favor on many of his claims;

25   however, prior to class certification, the parties notified the Court that they had reached a

26   settlement agreement on Plaintiff's class and individual claims.

27        On October 13, 2017, the Court granted Plaintiffs' unopposed Motion for Preliminary

28   Approval of Class Action Settlement.  (Dkt. No. 139.) Plaintiff's unopposed motion for final

approval of the class action settlement and for attorney's fees and expenses is now pending before the Court. (Dkt. No. 142.) There are no objections from any Class Members. The Court held a fairness hearing regarding final approval and fees on December 7, 2017. Having considered the arguments of counsel and the papers submitted, the Court GRANTS final approval of the Settlement Agreement and GRANTS IN PART the requested attorney's fees, costs, and incentive award.

## BACKGROUND

### I. Factual Background

The following undisputed facts are based on the facts before the Court in the cross-motions for summary judgment.

Plaintiff Robert Bradley Norris is a plumber and member in good standing of United Association Local 17 ("Local 17"), which is located in Memphis, Tennessee. (Dkt. No. 80 at ¶ 2.) He is also a participant in the Local 17 Defined Benefit Pension Plan ("the Local 17 Plan"). (*Id.* at ¶ 3.) In August 2011, he obtained a travel card from Local 17 and relocated to San Francisco, California. (Dkt. No. 90-2 at 10:3-13; 14:17-20.) Plaintiff then sought work through United Association Local 38 ("Local 38") as a journeyman plumber and designated the Local 17 Plan as his "Home Fund." (Dkt. No. 80 ¶ 3.)

Nearly a year later, he was hired by ACCO Engineering, a signatory to a collective bargaining agreement with the Local 38 Union. (*Id.*; Dkt. No. 90-2 at 23:12-24.) From July 2, 2012 until July 1, 2013, Plaintiff worked 1738 hours under a collective bargaining agreement, pursuant to which ACCO Engineering made contributions on his behalf to the Local 38 Plan (the "Local 38 Plan"). (*Id.* at 24:11-13; Dkt. Nos. 54-8 at 41-46 & 54-9 at 2-6.[1]) ACCO Engineering contributed to the Plan at the rate of $19.18 for hours worked in 2012 and $19.83 per hour for hours worked in 2013. (Dkt. No. 78-5.) Of these contributions, the Plan transferred $4.45 per hour Plaintiff worked to the Local 17 Plan and retained the remainder. (Dkt. No. 54-8 at 5.)

Both Local 17 and Local 38 are signatories to the United Association Pension Fund

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Reciprocal Agreement ("Reciprocal Agreement").  (Dkt. No. 57-2; Dkt. No. 78-1; Dkt. No. 79 at ¶ 3.)  The Reciprocal Agreement, Section 3, states in relevant part:

> Each Visited Fund shall make an accounting monthly of the Employer Contributions received by it during the month on behalf of Travelers and ***shall remit those Employer Contributions to the Home Fund upon receipt*** but no later than 45 calendar days after the end of the calendar month during which the Employer Contributions were paid to the Visited Fund, ***provided that the Home Fund certifies to the satisfaction of the Reciprocity Committee that the Traveler shall receive full credit for all Employer Contributions received by the Home Fund pursuant to this Agreement***. Where such certification is not provided to the Reciprocity Committee, the Visited Fund may forward contributions equal to the contributions required for pension benefits under the collective bargaining agreement of the Home Local.

(Dkt. No. 54-2 at 3 (emphasis added).)  As a signatory to the Reciprocal Agreement, the Local 38 Plan was required to transfer contributions made to the Plan on behalf of travelling employees such as Plaintiff to the travelling employee's Home Fund if the Home Fund certifies to the Reciprocity Committee that the travelling employee shall receive full credit for all employer contributions the Home Fund receives on the employee's behalf.  (*Id.*; Dkt. No. 54-8 at 5; Dkt. No. 79 at ¶ 5.)  Since 2004, Local 17 (Plaintiff's "Home Fund") has had a "Full Credit Certification" on file with the reciprocity office.  (Dkt. No. 79 ¶ 4.)

In December 2014, Plaintiff wrote the Local 38 Plan Trustees (the "Trustees") requesting Plan documents and other information associated with the Plan operation.  (Dkt. No. 54-3 at 2.) Plaintiff identified himself as a "participant in the Local 38 Pension Plan."  (*Id.*)  The Plan responded, refusing to provide any of the requested documents because Plaintiff was not a Plan participant.  (Dkt. No. 54-4.)  After further informal exchanges, Plaintiff filed a formal appeal contesting the determination that he was not a Plan participant and that he was not entitled to any additional contributions or benefits under the Plan or ERISA.  (Dkt. Nos. 54-5, 54-13, 54-14, 54-15.)

**II. Procedural Background**

When he did not receive a substantive response, Plaintiff filed the underlying complaint on behalf of himself and a putative class seeking to recover reciprocity contributions and the earnings thereon which were improperly withheld by Defendants: the Plan, the Plan Trustees, and Peter

Machi, the Plan Administrator.  (Dkt. No. 1.)  Plaintiff pleads four claims for relief under ERISA, Section 502, codified at 29 U.S.C. § 1132: (1) Section 502(a)(1)(B), (2) Section 502(a)(2), (3) Section 502(a)(3), and (4) ERISA Sections 502(c)(1), 502(a)(2) or 502(a)(3).  Plaintiff seeks an accrued benefit on contributions wrongfully withheld, to recover all losses due to Defendants' breach of the Plan terms and breach of fiduciary duty, and seeks to enjoin Defendants from taking action prohibited by the Plan, the Reciprocal Agreement, and ERISA.

Defendants thereafter filed a motion to dismiss which the Court denied. (Dkt. No. 64.) Plaintiff then filed a motion for statutory damages under Section 502(a)(1)(A) and Defendants filed a motion for judgment on the pleadings.  (Dkt. Nos. 66 & 73.)  The Court denied the motions without prejudice to renewal in the context of summary judgment.  (Dkt. No. 74.)  The Court set a briefing schedule for summary judgment noting that it would set class certification a briefing schedule upon disposition of the summary judgment motions.  The Court thereafter granted Plaintiff's motion for summary judgment in part and denied it in part, and granted Defendant's motion for summary judgment in part and denied it in part.  (Dkt. No. 108.)  The Court then set a schedule for class certification briefing.  (Dkt. No. 113.)  Prior to submission of the briefing, the parties notified the Court that they had reached a settlement and sought a stay of proceedings pending preparation of their motion for preliminary approval.  (Dkt. Nos. 127, 132.)

The Court thereafter granted the parties' motion for preliminary approval of the Settlement Agreement.  (Dkt. No. 139.)  In accordance with the Order granting preliminary approval, Plaintiff filed a motion for final approval and a motion for attorney's fees and reimbursement of expenses on November 10, 2017.  (Dkt. Nos.142.)  On October 23, 2017, the claims administrator mailed Notice of the proposed Settlement Agreement to the putative class via U.S. Mail.  (Dkt. Nos. 144 at ¶ 5; 144-1.)  Of the 553 Notices sent, 20 were returned and Notice was resent to 6 of these based on updated address information.  (*Id*. at ¶ 6; Dkt. No. 148.)  By the date of the final fairness hearing, no objections had been filed.  (Dkt. No.  145 at ¶ 2; Dkt. No. 148.)

## SETTLEMENT TERMS

On June 19, 2017 the parties attended an all-day mediation with ERISA Mediator and Arbitrator Norman Brand.  (Dkt. No. 137 at ¶ 2.)  At the conclusion of the mediation, the parties

agreed to a settlement which was memorialized by a term sheet. (Dkt. No. 137-3.) The parties later signed a settlement agreement that resolves the claims at issue on a class-wide basis. (Dkt. Nos. 137 at ¶ 2; 137-1.) The key provisions are as follows.

The Settlement Class is defined as:

> Travelers who traveled to and performed work in United Association Local 38's jurisdiction as a "Traveler" subject to the Reciprocal Agreement between November 1, 2004 and June 19, 2017, excluding Travelers whose Home Locals participate in the Plumbers and Pipe Fitters National Pension Fund. A subset of the Settlement Class is the "Damages Class" which shall mean: Travelers who traveled to and performed work in U.A. Local 38's jurisdiction as a "Traveler" subject to the Reciprocal Agreement between October 1, 2009 and June 19, 2017, excluding Travelers whose Home Locals participate in the Plumbers and Pipe Fitters National Pension Fund.

(Dkt. No. 137-1 at ¶ 1.21.) Only members of the Damages Class will receive any payment from the Class Settlement Amount. There are 335 members of the damages subclass.

The Settlement Agreement provides for a total Settlement Fund of $2,000,000 which is divided as follows: (1) a Common Fund of at least $1,465,000; (2) a class representative incentive award to Mr. Norris of $35,000, (3) an attorney's fees payment under 29 U.S.C. § 1132 from the Local 38 Pension Plan's insurance carrier not to exceed $500,000, and (4) an additional attorney's fee from the Common Fund of 25% (after deducting costs). (Dkt. No. 137-1 at ¶ 8.1.) The Common Fund shall be allocated as follows:

First, the damages subclass will receive a full and complete "true-up"; that is, each damages subclass member will receive 100% of the value of the difference between Local 38 Pension Plan's full hourly pension contribution rate and the amount transferred on behalf of each damages subclass member (i.e. 100% of employer non-PPA contributions). The aggregate value of this true-up is approximately $268,643.

Second, the Pension Protection Act of 2006 ("PPA contributions") of damages subclass members will be transferred to their Home Funds if their Home Funds calculate the monthly pension benefit using a defined contribution type formula, i.e., where the Traveler's pension benefit from his or her Home Fund is based, under the terms of the Home Fund Plan Document, on the amount of contributions made or transferred to the Home Fund on the Traveler's behalf. (Dkt. No. 137-1 at ¶ 8.1.1(c).) The value of these contributions is approximately $88,505.

Third, the balance of the Common Fund will be distributed pro rata amongst the remaining Damages Class members Home Funds based on the number of hours each Damages Class member worked in Local 38's jurisdiction during the Damages Class time frame. (*Id.*) The Home Funds calculate monthly pension benefits based on Traveler's years of service, and some may also provide increased benefits based on the dollar amount transferred. The balance to be divided pro rata is approximately $807,000.

In exchange for participation, Class Members agree to release all claims against Defendants under federal or state law that arise out of the facts and allegations in this action. (*Id.* at ¶ 4.1.)

### DISCUSSION

Judicial policy strongly favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "To vindicate the settlement of such serious claims, however, judges have the responsibility of ensuring fairness to all members of the class presented for certification." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Id.* In the first stage of the process, the court preliminarily approves the settlement pending a final fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class. *See Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012). "At the [final] fairness hearing . . . after notice is given to putative class members, the court entertains any of their objections to (1) the treatment of the litigation as a class action and/or (2) the terms of the settlement." *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014) (*citing Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)). Following the final fairness hearing, the Court must reach a final determination as to whether the parties should be allowed to settle the class action pursuant to their agreed upon terms. *See id.*; *Nat'l Rural Telecomm'cns Corp. v. DIRECTV, Inc.*, 221 F.R.D. 523, 535 (C.D. Cal. 2004).

//

//

//

## I.  Final Approval of the Settlement Agreement

### A. Final Class Certification of the Settlement Class

#### 1) Rule 23(a) Requirements

Class actions must meet the following requirements prior to certification:

> 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These requirements are known as numerosity, commonality, typicality, and adequacy of representation, respectively.  *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).  The Court must determine that Plaintiff has satisfied his burden to demonstrate that the proposed class satisfies each element of Rule 23.  These requirements "demand undiluted, even heightened, attention in the settlement context . . . for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citations and footnote omitted).

The Court previously found the putative class satisfied the requirements for numerosity, commonality, typicality, and adequacy of representation under Rule 23(a). (Dkt. No. 139.)  The Court is unaware of any changes that would alter its analysis; thus, all four of Rule 23(a)'s requirements are met.

#### 2) Rule 23(b) Requirements

Plaintiff seeks certification of the claims here under Rule 23(b)(1), as is typical of ERISA class actions.  *See Harris v. Amgen, Inc.*, 2016 WL 7626161, at *4 (C.D. Cal. Nov. 29, 2016); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008). Rule 23(b)(1) provides certification where:

> prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards or conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the

other members not parties to the individual adjudications or would
substantially impair or impede their ability to protect their interests.

"Certification under Rule 23(b)(1) is particularly appropriate in cases involving ERISA fiduciaries who must apply uniform standards to a large number of beneficiaries." *Wit v. United Behavioral Health*, 317 F.R.D. 106, 132–33 (N.D. Cal. 2016)(internal citation omitted). Here, Plaintiff alleges that Defendants breached their fiduciary duties under ERISA to transfer all hourly contributions to the prospective Class Members' Home Funds. If these issues were required to be litigated on an individual basis there is a risk of conflicting judgments, such as orders for Defendants to transfer all hourly contributions, orders for Defendants to transfer only non-PPA hourly contributions, orders permitting Defendants to retain hourly contributions but provide a Local 38 Plan benefit accrual for the same, or dismissals of the plaintiffs' claims. This result would be inconsistent with federal law which requires that pension plan terms and conditions be applied in a manner consistent to all participants. *See* 26 U.S.C. § 401(a)(4). Thus, these circumstances "present a paradigmatic example of a (b)(1) class." *Kanawi*, 254 F.R.D. at 112.

Accordingly, the Court concludes that all of the Rule 23(b)(l)(A) prerequisites are satisfied. Thus, the Settlement Agreement meets the Rule 23(b) requirements.

3) <u>Notice</u>

Notice in a Rule 23(b)(1) class action is governed by Rule 23(c)(2)(A) which provides only that "the court may direct appropriate notice to the class." Due process does not require that the court afford absent class members notice or an opportunity to opt out. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011).

Nonetheless, pursuant to Settlement Agreement, on October 20, 2017, Defendants mailed the Court-approved Class Notice to each Home Fund. (Dkt. No. 143 at ¶ 3.) In addition, Class Counsel retained a third-party search firm, Kurtzman Carson Consultants LLC ("Kurtzman) to locate addresses for the 557 Class Members. (Dkt. No 144 at ¶ 4.) Kurtzman located addresses for 553 of the 557 Class Members and mailed the Class Notice to each. (*Id.* at ¶¶ 4-5.) Twenty of these notices were returned by the U.S. Postal Service, and six of these were re-mailed based on updated address information. (*Id*. at ¶ 6; Dkt. No. 148.) The Court is satisfied this system of providing notice was reasonably calculated to provide notice to Settlement Class Members and was the best form of notice available under the circumstances.

Likewise, the content of the Notice is sufficient: it clearly identifies the options available to the putative class. (*See* Dkt. No. 144-1.) Class Members do not have to do anything to be a part of the Settlement class, but the Notice advises them that they have the right to object to the terms of the Settlement Agreement. (*Id*.) The Notice also thoroughly explains the nature and mechanics of settlement. (*Id*.) Thus, while notice is not required, the notice here satisfies the requirements for notice under Rule 23(c)(2). *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (citation omitted).

\* \* \*

Because the Settlement Class satisfies Rules 23(a) and 23(b)(1), and Notice was sufficient in accordance with Rule 23(c), the Court will grant final class certification.

## B. Approval of the Settlement Agreement

Having determined that class treatment is warranted, the Court now addresses whether the terms of the parties' settlement appear fair, adequate, and reasonable under Rule 23(e). In making this determination, a court typically considers the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). The court need not consider all of these factors, or may consider others. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("The factors in a court's fairness assessment will naturally vary from case to case[.]").

But in *Bluetooth*, the Ninth Circuit explained that when "a settlement agreement is negotiated *prior* to formal class certification, consideration of these eight . . . factors alone is" insufficient. *Id.* at 946 (emphasis in original). In these cases, courts must prove not only a comprehensive analysis of the above factors, but also determine that the settlement did not result from collusion among the parties. *Id.* at 947. Because collusion "may not always be evident on

the face of settlement, . . . [courts] must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id*. The court identified three such signs:

> (1) when class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply awarded[;]
>
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by the defendant which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class[;] and
>
> (3) when the parties arrange for fees not awarded to revert to defendants rather than to be added to the class fund.

*Id*. (internal quotation marks and citations omitted). For the reasons stated below, on balance a review of these factors indicates that this Settlement Agreement is fair, adequate, and reasonable.

### 1) The Initial Eight Factors

#### a. Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation and Class Certification

The first relevant factor is the risk of continuing litigation, including the strengths and weaknesses of Plaintiffs' case on the merits, balanced against the certainty and immediacy of recovery from the Settlement Agreement. *See Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454, 458 (9th Cir. 2000). There is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Rodriguez*, 563 F.3d at 965 (internal quotation marks and citation omitted). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Id*. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *DIRECTV*, 221 F.R.D. at 526 (quotation marks and citation omitted).

Here, Plaintiffs filed a class action complaint under ERISA. Because of the legal issues presented, the Court heard summary judgment prior to class certification and resolved many of

those claims in Plaintiff's favor concluding that the Trustees had breached their fiduciary duties to him by withholding Plan contributions that should have been transferred to his Home Fund. (Dkt. No. 108.)  The Court also resolved the threshold question of Plaintiff's statutory and constitutional standing in Plaintiff's favor, but these issues would have arisen again in the context of class certification.  The risks of going forward with litigation include uncertainties regarding: whether the proposed Class would survive the Defendants' attacks on class certification; whether any Class Members are entitled to PPA contributions; whether Class Members whose Home Funds calculate pension benefits on years of service are entitled to additional pension benefits under the terms of their Home Fund plans for reciprocity contributions, or have standing to pursue claims in this litigation; whether Class Member claims would be dismissed under statutes of limitations; and the number of Class Members who qualify as Participants in the Local 38 Pension Plan.

Finally, although the Court resolved a number of claims in Plaintiff's favor on summary judgment, the Court reserved the issue of whether Plaintiff's PPA contributions are recoverable in light of the Ninth Circuit Court of Appeal's consideration of that issue in *Lehman v. Nelson*, Docket No. 15-35457 (9th Cir. filed Jun 10, 2015).  Although the Ninth Circuit has since issued its decision in *Lehman*, whether PPA contributions are recoverable is still an open question because the Ninth Circuit remanded the case to the district court to determine this issue in light of its order. *See Lehman v. Nelson*, 862 F.3d 1203, 1221 (9th Cir. 2017).  Plaintiff insists, and the Court agrees, that *Lehman* demonstrates the complicated and protracted nature of litigation regarding these claims.  *Lehman* was filed in 2013 and over four years later it is still pending following an appeal to the Ninth Circuit.  (Dkt. No. 142 at 13 n.3.)  Here, the PPA funds make up the vast majority of the relief the Class seeks.  Given the uncertainty of the outcome of this issue, there was significant risk that Plaintiff and the Class would not recover any of these PPA contributions.

In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.  *See Catala v. Resurgent Capital Servs. L.P.*, No. 08C-V-2401 NLS, 2010 WL 2524158, at *3 (S.D. Cal. June 22, 2010) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

b) *The Settlement Amount*

The fourth fairness factor, the amount of recovery offered, also favors final approval of the Settlement Agreement. This factor "is generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class." *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citation omitted). Because "the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class counsel may urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (internal quotation marks, citation, and footnote omitted).

When considering the fairness and adequacy of the amount offered in settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV*, 221 F.R.D. at 527 (citation omitted). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (collecting cases).

The relief under the Settlement Agreement is significant – the Common Fund provides for 100% of non-PPA contributions and approximately 63% of PPA contributions withheld. Under the Agreement, all Damages Subclass Members will receive a true-up transfer of 100% of all withheld non-PPA contributions. In addition, those Damages Subclass Members whose Home Funds provide benefits based on a defined contribution formula will receive a transfer of 100% of withheld PPA contributions. The remaining Common Fund monies will be allocated pro rata to the remaining Damages Subclass Members' Home Funds, which provide benefits based on hours or years of service. As noted above, that Class Members are recovering PPA contributions is significant because the law on this issue is unsettled. Further, standing issues could present significant issues for class certification, but through the Settlement Agreement these individuals still recover. The only individuals who will not recover financially are those whose claims are barred by the statute of limitations.

c) *Extent of Discovery Completed & the Stage of the Proceedings*

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table[.]" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quotation marks and citation omitted). Rather, the court focuses on whether "the parties carefully investigated the claims before reaching a resolution." *Ontiveros*, 303 F.R.D. at 371 (citation omitted).

The extent of discovery completed and stage of the proceeding also supports the Settlement Agreement. The parties have engaged in substantial discovery and motion practice and thus have had an opportunity to evaluate the strength and weaknesses of the relative claims and defenses. Further, while this settlement comes prior to class certification, it is post-summary judgment so the Court has passed on the legality of many of the claims at-issue and found in Plaintiff's favor on several. This factor thus weighs in favor of the Settlement Agreement.

d) *Experience and Views of Counsel*

The experience and views of counsel also weigh in favor of approving the Settlement Agreement. Class Counsel has extensive experience in ERISA including experience specifically with Travelers' and reciprocity agreements, and both Class and defense counsel have decades of experience litigating ERISA issues. (Dkt. Nos. 137 at ¶¶ 3 & 13; 143 at ¶ 1; 145 at ¶ 7.) Class Counsel has thoroughly evaluated the legal theories and risks and believes that the settlement is fair, reasonable, and adequate, and in the best interests of the Class. (Dkt. Nos. 145 at ¶ 4.) Given Class Counsel's extensive experience in this field, this factor supports final approval of the Settlement Agreement. *See Hanlon*, 150 F.3d at 1026; *Rodriguez v. West Pub. Corp.*, No. CV05–3222 R(MCx), 2007 WL 2827379, at *8 (C.D. Cal. Sept. 10, 2007) ("The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.").

e. *Presence of a Government Participant*

No government entity is a party to this action. This factor is thus neutral.

f. *The Reaction of Class Members*

The final factor looks at the reaction of class members; thus, the number of class members who object to a proposed settlement is a factor to be considered. *Mandujano v. Basic Vegetable*

13

*Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976). Here, Kurtzman mailed Notice to at least 99.3% of Class Members and only 20 of those Notices were returned by the post office. (Dkt. No. 144 at ¶¶ 4-6; Dkt. No. 148.) Of these 20 returned, 6 were resent based on updated address information. (*Id.*) No objections have been filed or received by Class Counsel and the deadline to submit objections has passed. (Dkt. No. 145 at ¶ 2; Dkt. No. 148.)

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members." *Omnivision*, 559 F. Supp. 2d at 1043 (quotation marks and citation omitted). Put another way, a "court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014) (internal quotation marks and citation omitted); *see also Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.").

Accordingly, this factor likewise weighs in favor of the Settlement Agreement.

2) The *Bluetooth* Factors

Given that the parties reached this Settlement Agreement prior to class certification, the Court must look beyond the initial eight factors and examine the settlement for evidence of collusion with an even higher level of scrutiny. *See Bluetooth*, 654 F.3d at 946. The question is whether the Settlement Agreement was the result of good faith, arms-length negotiations or fraud and collusion. Two of the three warnings signs that the Ninth Circuit identified exist. However, for the reasons described below the Court finds no evidence of collusion between the parties. *See Bluetooth*, 654 F.3d at 950 (noting that upon remand the district court may uphold the settlement notwithstanding the presence of all three of the *Bluetooth* warning signs).

First, the Court compares the payout to the class (actual and expected) to class counsel's unopposed fees claim. *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 4831157, at *6 (N.D. Cal. Oct. 12, 2011). The Settlement Agreement provides that Plaintiff is entitled to an award of attorney's fees in the amount of 25 percent of the Common Fund—$358,751 plus a separately paid sum of $500,000. (Dkt. No. 137-1 at ¶ 8.1.2.) The total payout to

participating class members is expected to be $1,076,255. Class counsel's fee request is thus 44 percent of the total settlement value. However, under the Agreement, all class members whose claims are not barred by the statute of limitations receive the full value of any non-PPA contributions and 63 percent of their PPA contributions either directly or through pro rata shares. Class members are thus made whole *and* receive a portion of their PPA funds which is more than they might have received even if they had prevailed at trial given the uncertain state of the law. This factor thus does not suggest collusion.

In addition, the second warning sign—a "clear sailing" provision—is present here: the Settlement Agreement obligates Defendants not to object to Plaintiff's request for fees up to 25% of the common fund plus $500,000 in statutory attorney's fees. (Dkt. No. 137-1 at ¶ 8.1.2.) "The very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." *Bluetooth*, 654 F.3d at 948 (internal quotation marks omitted). "Therefore, when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys fees and benefit to the class, being careful to avoid awarding unreasonably high fees simply because they are uncontested." *Id.* (internal quotation marks omitted).

The third warning sign—whether the parties have arranged for fees not awarded to the class to revert to the defendants rather than be added to the class fund, *see Bluetooth*, 654 F.3d at 948—is not present here, where the Settlement Agreement provides that any remaining funds will be redistributed. (Dkt. No. 137-1 at ¶ 8.1.1(c).)

Notwithstanding the existence of two of the three warning signs, the Court finds that the settlement did not result from, nor was influenced by, collusion. First, the settlement adequately satisfies the Class Members' claims, which is reflected at least in part by the complete absence of objections to the settlement. Moreover, the Court finds no evidence of explicit collusion here, where, after considerable motion practice, the parties engaged in settlement talks overseen by a neutral mediator before agreeing on this settlement. Considering the scope of litigation and the nature of the negotiations process, the Court is satisfied that the settlement is the product of successful arms-length negotiations. *See Bluetooth*, 654 F.3d at 948 (holding that participation of a mediator is not dispositive, but is "a factor in favor of a finding of non-collusiveness").

In sum, the initial eight fairness factors support approval, and the *Bluetooth* factors do not indicate collusion. The Court is therefore satisfied that the Settlement was not the result of collusion between the parties and instead is the product of arms-length negotiations between experienced and professional counsel. There are no objections to address. For each of these reasons, the Settlement Agreement passes muster under Rule 23(e) and final approval is appropriate.

## II. Attorney's Fees Award

Next, the Court must determine whether the requested attorney's fees and litigation expenses are fair and reasonable. Class Counsel seeks an award of $858,751 in attorney's fees. The Settlement Agreement provides that $500,000 of this amount shall come from Defendants' insurance carrier as statutory attorney's fees under Section 1132(g), and the remaining $358,751 represents 25% of the Common Fund. Class Counsel's litigation expenses of $29,994 are also deducted from the Common Fund. While Class Counsel urges the Court to consider the 1132(g) fee separate from the percentage of the Common Fund fee, the Court declines to do so. Instead, the Court first looks to whether Plaintiff is entitled to fees under ERISA, and if so, whether the total amount of fees here is reasonable.

### A. Attorney's Fees Under ERISA

ERISA provides that "[a] court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C § 1132(g)(1). Further, ERISA "should be liberally construed in favor of protecting participants in employee benefits plans." *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984). Section 1132(g)(1) should thus be "read broadly to mean that a plan participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under his plan, should ordinarily recover attorney's fees unless special circumstances would render such an award unjust." *Smith*, 746 F. 2d at 589 (internal citation and quotation marks omitted).

First, the court must find that the plaintiff has achieved "some success on the merits." *Hardt v. Reliance Standard Life Ins. Co*., 560 U.S. 242, 252–55 (2010). The success must be more than a "trivial success on the merits" or a "purely procedural victor[y]," but if the court can "fairly

call the outcome of the litigation some success on the merits," it need not conduct a "lengthy inquir[y]" into whether that success was "substantial" or "occurred on a 'central issue.'" *Id.* at 255 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 n.9 (1983)). Next, if the court concludes that the plaintiff has achieved success on the merits, it must analyze the request for fees under the five factors set forth in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980). These include: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Id.* No one of these factors is "necessarily decisive," and some may not be relevant in a given case. *Carpenters S. California Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984).

Here, all five of the *Hummell* factors weigh in favor of an award of fees. First, while there is no evidence of bad faith, this finding is not dispositive, especially where, as here, the Court has found Defendants culpable of at least some of the conduct alleged—namely, breaching their fiduciary duties to Plaintiff by not transferring the contributions made on his behalf. *See Smith*, 746 F.2d at 590 (holding that bad faith "is not required"). Second, because Defendants' insurance carrier has agreed to pay the majority of the attorney's fees award, the ability of the opposing party to satisfy the fee award also weighs in favor of a fee award here. *See id.* ("absent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant.") Third, an award of fees would deter future conduct such as this on the part of Defendants. *See Rangel v. Aetna Life Ins. Co.*, 2016 WL 1449539, at *2 (C.D. Cal. Apr. 12, 2016) (holding that the deterrence "factor considers whether awarding fees in this matter will deter other employers from denying meritorious benefit claims in similar circumstances."). Fourth, Class Counsel has achieved significant results on behalf of the class of ERISA participants and sought to resolve a significant legal issue regarding traveler and PPA contributions. Finally, while both parties' positions had merit, the Court's decision in Plaintiff's favor regarding traveler contributions "settl[ed] a disputed provision [and resolved] an ambiguity." *Smith*, 746 F.2d at 590.

Given the Ninth Circuit's admonition that successful ERISA plaintiffs "should ordinarily recover attorney's fees," Plaintiff is entitled to attorney's fees under § 1132(g)(1). There are no "special circumstances" that justify departing from this normal rule. The Court thus turns to the question of what constitutes a reasonable fee award in this case.

## B. The Attorney's Fees are Reasonable

When a negotiated class action settlement includes an award of attorney's fees, the fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 126 (9th Cir. 2002). At the same time, the court has "an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941 (citations omitted); *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328-29 (9th Cir. 1999) ("[T]he district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper.") (footnote omitted).

The Ninth Circuit has approved two methods of determining attorney's fees in cases where the amount of the attorney's fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.* However, in fee-shifting statute cases the lodestar method is favored. *See Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 955 (9th Cir. 2007). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). "Foremost among these considerations, however, is the benefit obtained for the class." *In re Bluetooth*, 654 F.3d at 942.

This case is unique in that the total attorney's fees award comes from two different places: (1) a lump sum fee from the insurance carrier of $500,000, and (2) a smaller sum of $358,751 which amounts to 25% of the Common Fund. The total, however, is less than Class Counsel's lodestar of $967,318. For this reason and because courts generally use the lodestar method to

18

determine fees in an ERISA action, the Court's analysis here begins with the lodestar. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007).

1) Lodestar

"To calculate attorney's fees awarded under § 1132(g)(1), district courts utilize a two-step hybrid lodestar/multiplier approach." *Welch v. Metro. Life Ins. Co.*, 480 F. 3d 942, 945 (9th Cir. 2007). "First, the court establishes a lodestar by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Id.* "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed." *Id.* at 945–46 (citing *Hensley*, 461 U.S. at 433). "Second, in rare and exceptional cases, the district court may adjust the lodestar upward or downward using a multiplier based on facts not subsumed in the initial lodestar calculation." *Welch*, 480 F. 3d at 946 (internal citation and quotation marks omitted).

*1) Reasonable Rate*

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986) (citation omitted), amended on other grounds by 808 F.2d 1373 (9th Cir. 1987). The relevant community for the purposes of determining the prevailing market rate is generally the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citation omitted). In addition to affidavits from the fee applicant himself, other evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases. *See Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1167 (N.D. Cal. 2012) (citation omitted).

Class Counsel requests hourly rates of $680 for lead counsel Richard Birmingham, $480 for Joseph Hoag, $450 for Colin Wells, and $395 for Christine Hawkins.  These rates are in line with the rates charged by other ERISA litigators in the San Francisco Bay Area.  (Dkt. Nos. 145-2; 137-6; 137-7.)  Defense counsel Mr. Baker, an experienced ERISA litigator as well, charges $850 per hour.  (Dkt. No. 145-2 at ¶ 3.)  Accordingly, the Court finds that the hourly rates charged by Class Counsel here are reasonable.

*2) Reasonable Hours Expended*

As to the number of hours billed, they must equal the number of hours that can reasonably be billed to a private client. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Thus, the court should only award fees based on "the number of hours reasonably expended on the litigation" and should exclude "hours that are excessive, redundant, or otherwise unnecessary [.]" *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). "There is no precise rule or formula for making these determinations[,]" and the court "necessarily has discretion in making this equitable judgment." *Id*. at 436-37.

Class Counsel submits time records detailing 1854.40 hours of work performed on this case. (Dkt. No. 145-1.) The parties engaged in considerable discovery and motion practice, including cross-motions for summary judgment. Given the amount of work performed, the number of hours expended was reasonable. This work could reasonably be billed to a private, hourly-fee client and is therefore compensable. *Gonzalez*, 729 F.3d 1196, 1202.

\*\*\*

Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino v. Microsoft Corp*., 290 F. 3d 1043, 1050 (9th Cir. 2002). Here, Class Counsel do not seek a multiplier; rather, their request for $858,751 is less than their lodestar of $967,318. The lodestar method establishes the reasonableness of this request. *See Stewart v. Applied Materials, Inc*., No. 15-CV-02632-JST, 2017 WL 3670711, at \*10 (N.D. Cal. Aug. 25, 2017) (awarding fees in an ERISA class action settlement using the lodestar method).

2) Percentage of the Fund

"Under the percentage-of-recovery method, the attorney's fees equal some percentage of the common settlement fund[.]" *In re Online DVD*, 779 F.3d at 949. In the Ninth Circuit, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942. "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be

20

either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Plaintiffs' request for $858,751 in attorney's fees represents approximately 44% of the total $2 million Settlement Fund, significantly higher than the 25% benchmark for a reasonable award. The Court nevertheless finds it appropriate under the circumstances. First, the overall result and benefit to the class from the litigation is the most important factor in granting a fee award, *see In re Bluetooth*, 654 F.3d at 942, and as discussed above, the result achieved for the Class is favorable considering the potential risks with respect to class certification and standing. The skill required and quality of work performed, likewise supports the fee award sought here. Class Counsel engaged in extensive motion practice and discovery and ultimately achieved a significant victory at summary judgment; indeed, the finding that Defendants breached their fiduciary duties by failing to transfer non-PPA contributions under the Reciprocity Agreement will apply to all future Travelers to Local 38 because ERISA requires pension plan trustees, such as Defendants, to treat all plan participants alike. Class Counsel is highly experienced in ERISA actions and uniquely so with respect to PPA contributions and reciprocity agreements. The contingent nature of this action also supports the fee award here. Class Counsel have litigated this case since 2015 and, to date, have incurred at least $29,994 in out-of-pocket expenses and over $900,000 in time worked on the matter, all with the possibility of little to no recovery, as described above. (Dkt. No.145-1.) Thus, that Class Counsel have significant experience in this field and took on this matter on a contingent basis further indicates that the fee request is reasonable. The lack of any Class Member objections also supports the fee award. Finally, only 25% of the fee actually comes out of the class member recovery, which is on par with settlements in other complex ERISA class actions. *See, e.g.*, *Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, No. CV09-5457 PSG (JCX), 2016 WL 5938722, at *10 (C.D. Cal. May 16, 2016) (awarding 30 percent of the common fund for attorney's fees in an ERISA class action settlement because the "skill and labor required to adequately address complex issues of ERISA law").

The percentage-of-recovery analysis therefore does not render the requested fees unreasonable. *See Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3616638, at *9 (N.D. Cal. June 26, 2017) ("Rather than abandon the percentage-of-recovery method, the best way to guard

21

against a windfall is first to examine whether a given percentage represents too high a multiplier of counsel's lodestar.").

***

The Court thus approves Class Counsel's request for $858,751 in attorney's fees.

## C. Litigation Expenses

Class Counsel also seeks reimbursement of $29,994 in litigation expenses, including copying, court costs, court reporter costs, computer research, delivery fees, and travel expenses. (Dkt. No. 145-1 at 59-68.) "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros*, 303 F.R.D. at 375 (quotation marks and citations omitted). To that end, courts throughout the Ninth Circuit regularly award litigation costs and expenses— including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—as attorneys routinely bill private clients for such expenses in non-contingent litigation. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (noting that a prevailing plaintiff may be entitled to costs including, among other things, "postage, investigator, copying costs, hotel bills, meals," and messenger services). Class Counsel's request for reimbursement of costs that are reasonable, regularly billed to clients in hourly fee cases, and routinely awarded in contingency fee cases is proper.

## III. Incentive Payment

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003). To determine the appropriateness of incentive awards a district court should use "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions...the amount of time and effort the plaintiff expended in pursuing the litigation...and reasonabl[e] fear[s of] workplace retaliation." *Id*. Incentive awards typically range from $2,000 to $10,000. *See, e.g*., *Covillo v. Specialtys Cafe*, No. C-11-00594 DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (ordering an $8,000 incentive award for each of the three named plaintiffs); *Wolph v. Acer Am. Corp.*, No. 09-01314 JSW, 2013 WL 5718449, at *6 (N.D. Cal. Oct. 21, 2013) (ordering a $2,000 incentive award for

22

each named plaintiff); *Chu v. Wells Fargo Invs., LLC, Nos*. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at *5 (N.D. Cal. Feb. 16, 2011) (awarding a $10,000 incentive award to two named plaintiffs).

In addition to his individual recovery, Plaintiff seeks an incentive award of $35,000 as compensation for his efforts on behalf of the Class. Class counsel suggests that this amount is reasonable because of the significant risk and burden Plaintiff took in litigating this case. Counsel points to Plaintiff's two depositions and his attendance at the all-day mediation, in addition to the fact that he has been forced to return to Tennessee because he cannot find suitable union work in California. (Dkt. No. 146 at ¶¶ 5-8.) There is no suggestion, however, that the union has deliberately prevented him from obtaining employment in California as a result of his participation in this action.

Plaintiff's individual damages recovery here is not insubstantial. Following the final approval hearing, Plaintiff submitted a supplemental brief regarding his individual recovery under the Settlement Agreement, which reflects that Plaintiff will receive $16,073.50 as the "true up" for his PPA funds and $14,694.92 for his non-PPA funds for a total of more than $30,000. (Dkt. No. 150.) In light of this and having reviewed Plaintiff's declaration and that of Class Counsel, the Court determines that some incentive award is appropriate, but not the full amount sought here. At the preliminary approval hearing, the Court advised Class Counsel that $35,000 was very high for an incentive award and noted that counsel would need to make a showing regarding why such a high amount was justified; however, no such showing has been made. Accordingly, the Court determines that an incentive award here of $10,000 adequately compensates Plaintiff for the risks and burdens of pursuing this case on behalf of the class and fairly compensates him for the significant results he achieved on their behalf.

## CONCLUSION

For the reasons described above, the Court GRANTS Plaintiff's motion for final approval of the parties' Settlement. In addition, the Court GRANTS IN PART Plaintiff's motion for attorney's fees, costs, and an incentive award. Specifically, the Court awards the following: $858,751 in attorney's fees, $29,994 in litigation costs, and $10,000 to Plaintiff as class

representative.

This Order disposes of Docket No. 142.

The Clerk is directed to close this case.

**IT IS SO ORDERED.**

Dated: December 19, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge